UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HAL JENKINS, as assignee of certain of the claims of CLJ HEALTHCARE, LLC, and CLJ HEALTHCARE, LLC, as to certain non-assigned claims, <br><br> Plaintiffs, <br><br> v. <br><br> PRIME INSURANCE CO., PRIME HOLDINGS INSURANCE SERVICES, INC. d/b/a CLAIMS DIRECT ACCESS, DAVID MCBRIDE, ESQ. and EVOLUTION INSURANCE BROKERS, LC, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:20-cv-01263-JPB |

## <u>ORDER</u>

Before the Court is Defendants Prime Insurance Company ("Prime"),[1] Prime

Holdings Insurance Services, Inc. d/b/a Claims Direct Access ("Claims Direct"),

David McBride, Esq. ("McBride") and Evolution Insurance Brokers, LC's

("Evolution") (collectively "Defendants") Motion to Dismiss ("Motion").  ECF

No. 4.  Having reviewed and fully considered the papers filed therewith, the Court

finds as follows:

---

[1] Prime is designated in the case style as "Prime Insurance Co."

## I.   <u>BACKGROUND</u>

Plaintiffs Hal Jenkins, as assignee of certain claims of CLJ Healthcare, LLC ("CLJ"), and CLJ, as to certain non-assigned claims, (collectively "Plaintiffs") filed a complaint against Defendants in connection with their sale and administration of an insurance policy.

As alleged in the Complaint, Prime issued a professional liability insurance policy to CLJ effective December 22, 2012, to December 22, 2013 (the "Policy"), which covered CLJ and Nedra Dodds, M.D. ("Dodds").[2]  The Policy was sold through Evolution, and the declarations page reflected $50,000 in professional liability and $100,000 in aggregate coverage.

---

[2] Defendants attach a copy of the Policy to their Motion.  While a court is typically limited to allegations in the complaint in ruling on a motion to dismiss, it "may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  *See also Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is . . . properly considered, provided that its contents are not in dispute."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").  Because Plaintiffs have not objected to Defendants' proffer of the Policy, and the Court finds it is central to the claims in this case, the Court will consider the Policy as necessary to make the rulings herein.

In February 2013, April Jenkins, a patient under the care of Dodds, died after receiving liposuction treatment.  Hal Jenkins, as representative of April Jenkin's estate, thereafter submitted a claim to Prime as a result of the incident. McBride, Prime's attorney and Senior Vice President, responded in April 2013 that the Policy limit was $50,000.

In August 2013, Hal Jenkins filed suit against CLJ and Dodds in the State Court of Cobb County for damages sustained as a result of April Jenkins' death (the "Jenkins Claim").  McBride, allegedly acting as CLJ's counsel, tendered $50,000 to Hal Jenkins as settlement for the Jenkins Claim.  Prime also wrote a letter to CLJ stating that the Policy provided $50,000 in coverage for the claim.

The Complaint alleges that at no time prior to the filing of the Jenkins Claim did Prime inform CLJ that it could challenge Prime's determination of the Policy limit.  Further, Prime allegedly did not inform CLJ that the cost to defend the Jenkins Claim would quickly exceed $50,000 or that CLJ could tender its own funds to help resolve the claim.  McBride eventually retained counsel to represent CLJ and Dodds in October 2013.

In April 2014, Hal Jenkins made a settlement demand to Prime of $100,000 with certain contingencies.  Prime tendered $39,000 in response but allegedly did

not discuss the tender with CLJ.[3]  CLJ asserts that had McBride properly advised it of its options, it would have arranged to pay the difference between Hal Jenkins' demand and Prime's tender.

In May 2014, McBride informed CLJ that the Policy limit of $50,000 had been depleted and that Prime would no longer defend CLJ and Dodds.  In July 2014, the Cobb County court allowed counsel hired by Prime to withdraw from CLJ and Dodds' representation.  Around that time, while allegedly acting as CLJ's counsel, McBride attempted to obtain a waiver from CLJ and Dodds that the Policy limit was $50,000 and that the available funds had been depleted through the defense of the Jenkins Claim.

Hal Jenkins subsequently dismissed Dodds from the action, leaving CLJ as the only defendant.  A default judgment was issued against CLJ, and a jury awarded damages against CLJ in the amount of $60 million in December 2018 (the "Jenkins Judgment").

At the heart of Plaintiffs' claim in this case is their contention that the Policy provided $100,000 in coverage.  They assert that Prime's incorrect determination that the Policy limit was only $50,000 resulted in Prime's wrongful rejection of

---

[3] Apparently, the amount of coverage available had been diminished by legal expenses related to the ongoing representation of CLJ and Dodds.

Hal Jenkins' settlement demand and the premature withdrawal of CLJ and Dodd's defense.  Plaintiffs also claim that certain expenses were improperly charged to the Policy.  In short, Plaintiffs presume that had Prime tendered $100,000 to settle the Jenkins Claim or if CLJ had been informed that it could contribute its own resources to meet the settlement demand, the Jenkins Claim would have been resolved quickly.

## II.   ANALYSIS

### A.   Motion to Dismiss

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must instead "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

### 1. Count One (Legal Malpractice as to McBride and Prime) and Count Two (Breach of Fiduciary Duty as to McBride and Prime)

Plaintiffs allege that McBride is liable for legal malpractice because he provided legal advice and counseling to CLJ even though he had a conflict—his

6

employer's (Prime) interest was adverse to CLJ's.  They also assert that McBride's alleged legal representation fell below the requisite standard of care because, among other things, he incorrectly determined the Policy limit; he did not inform CLJ it could challenge Prime's coverage determination; he failed to inform CLJ of Hal Jenkins' settlement demand in April 2014; he did not advise CLJ he was working with Prime's coverage counsel regarding the Jenkins Claim; he improperly determined that CLJ's coverage under the Policy had been exhausted; he attempted to obtain a release from CLJ relating to Prime's obligations; and he filed a declaratory judgment action against CLJ in Utah with the knowledge that CLJ lacked the resources to defend the action.

Plaintiffs plead their breach of fiduciary duty claim in the alternative to the legal malpractice claim, contending that McBride breached his duty to act in good faith in his dealings with CLJ by taking the actions set forth above.

Defendants argue that the legal malpractice and breach of fiduciary duty claims should be dismissed because they are barred by the four-year statute of limitations applicable to such claims.  They explain that because all of the alleged actions underlying those claims occurred no later than July 8, 2014, when counsel hired by Prime terminated their representation of CLJ and Dodds, the deadline to file the Complaint expired in 2018.  Since Plaintiffs did not file their Complaint

until March 10, 2020, Defendants conclude that Counts One and Two are time-barred.

Plaintiffs counter that the six-year statute of limitations for written contracts is applicable here rather than the four-year period for legal malpractice and breach of fiduciary duty claims because McBride provided services to CLJ and Dodds pursuant to a written insurance policy.

They additionally argue that the accrual date for the malpractice and breach of fiduciary duty claims is as late as February 11, 2019, when McBride executed an affidavit to be used against CLJ in a declaratory judgment action filed in Utah regarding the Policy limit (the "Utah Action"). Alternately, they offer July 2019, the date on which McBride submitted an affidavit in support of domesticating in Georgia the judgment obtained against CLJ in the Utah Action.

Finally, Plaintiffs contend that the Complaint was filed within four years of the "ultimate injury" in this case (the Jenkins Judgment), which occurred on December 18, 2018.

Defendants reply that the six-year statute of limitations for actions concerning a written contract does not apply here because an insurance policy is not the same as a written contract for professional services.

8

Further, Defendants argue that Plaintiffs' allegations regarding the 2019 affidavits should be disregarded because they were not asserted in the Complaint. They also point out that the 2019 affidavits cannot form the basis for an injury which, by Plaintiffs' calculation, occurred at the latest in 2018—***prior*** to the alleged wrongful action. Defendants underscore that, in any event, claims based on such affidavits would be time-barred because the underlying Utah action was filed in January 2015.

Finally, Defendants argue that Georgia law does not recognize Plaintiffs' "ultimate injury" theory for determining the accrual date of a legal malpractice or breach of fiduciary duty claim. Therefore, Plaintiffs cannot rely on the date of the Jenkins Judgment for that purpose.

In short, the questions for the Court are (i) whether the four-year or six-year statute of limitations controls here; and (ii) when the causes of action accrued.[4]

**Applicable Statute of Limitations**

"In determining which statute of limitation applies, the threshold inquiry is to determine whether a written agreement actually exists between the parties such

---

[4] The parties have not taken a position on whether Georgia or Utah law (the law governing the Policy) applies here. However, they appear to agree that Georgia law governs the tort claims because Defendants have not challenged Plaintiffs' reliance on Georgia law in their opposition brief.

that any implied duties sued upon would have grown directly out of the existence of the written contract itself." *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 703 S.E.2d 323, 325 (Ga. 2010). For the six-year statute of limitations to apply, the alleged liability must "rest[] in or grow[] out of [the] written contract[], not remotely or ultimately, but immediately." *Id*. In *Newell*, the Georgia Supreme Court decided that the six-year statute of limitations applied to a malpractice claim against a professional engineering firm because the underlying work was completed pursuant to a written Scope of Work agreement as opposed to an oral or implied promise to perform. *Id*. at 325. In explaining its rationale, the court contrasted the decision in *Nelson v. Nelson*, 335 S.E.2d 411, 413 (Ga. Ct. App. 1985) (finding that the written promissory note at issue required the application of the six-year statute of limitation) with the one in *Jankowski v. Taylor, Bishop & Lee*, 269 S.E.2d 871, 874 (Ga. Ct. App. 1980) (finding that the attorney's retainer letter, which detailed only fees and not the agreed upon services, did not constitute a written contract sufficient to require application of the six-year statute). 703 S.E.2d at 326.

Applying the reasoning of *Newell* here, the Court finds that the Policy is not an agreement for professional services that sets forth the specific responsibilities McBride or Prime agreed to undertake in the alleged representation. Nor did those

alleged responsibilities grow "immediately" out of the Policy.  Whatever legal advice McBride is alleged to have provided cannot be considered an agreed upon service rendered pursuant to the Policy.  At best, such advice was incidental to the administration of the Policy.  Accordingly, the six-year statute of limitations governing written contracts does not apply.  Instead, the four-year statute of limitations applicable to legal malpractice and breach of fiduciary duty claims governs.

Plaintiffs' citation to *Crosby v. Kendall* is inapposite because in that case, the attorney was alleged to have breached a written escrow agent agreement that described his specific responsibilities.  545 S.E.2d 385, 388 (Ga. Ct. App. 2001). The six-year statute of limitations applied because his duties grew out of the written contract.  *Id*.  That is not the case here.  The Policy did not describe legal representation duties, and Plaintiffs have not cited any authority supporting their argument that an insurance policy is the equivalent of a written contract for legal services.

**Accrual Date of Plaintiffs' Claims**

Georgia law is clear that "[i]n an action for damages against an attorney at law for unskillfulness or negligence, the statute of limitation runs from the date of the breach of the duty and not from the time when the extent of the resulting injury

is ascertained nor from the date of the client's discovery of the error." *Jankowski*, 269 S.E.2d at 874.  Thus, contrary to Plaintiffs' contention, the "continuing tort theory" is not viable here.  *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 368 S.E.2d 732, 733 (Ga. 1988).  *See also Hendry v. Wells*, 650 S.E.2d 338, 343–44 (Ga. Ct. App. 2007) (finding that the statute of limitations for a breach of fiduciary claim began running with the defendant's ***first*** allegedly wrongful act).

In this case, the earliest action cited in the Complaint as evidence of malpractice or breach of fiduciary duty is McBride's assertion in April 2013 that the Policy limit was $50,000.  Other allegations of malpractice include McBride's communication to CLJ in May 2014 that the Policy was exhausted and the July 2014 withdrawal of counsel from the Cobb County action.  The latest action cited is Prime's filing of the Utah Judgment in 2015.

Whether the Court looks at the first instance of alleged malpractice in 2013 or the last instance in 2015, the conclusion is the same.  Counts One and Two are time-barred because the Complaint was filed in March 2020—more than four years after those actions took place.

As Defendants correctly point out, Plaintiffs' arguments that the clock did not begin running until McBride filed the 2019 affidavits is unavailing.  First, those allegations may not be considered by the Court because they were not pleaded in

the Complaint.  *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284

(11th Cir. 2007) (stating that "[o]rdinarily, [the court] do[es] not consider anything

beyond the face of the complaint and documents attached thereto when analyzing a

motion to dismiss").  Second, Plaintiffs have not explained why actions McBride

took in 2019, *after* Prime ended its defense of CLJ and Dodds, the Policy had

expired and McBride could no longer be deemed to be representing them, would

serve as a basis for a malpractice and breach of fiduciary duty claim.  Third, those

actions were taken after the claimed injury (the Jenkins Judgment) occurred.

Accordingly, the Court dismisses Counts One and Two of the Complaint.

> **2.    Count Three (Breach of Contract as to Prime) and
>         Count Four (Negligence as to Prime and Claims
>         Direct)**

With respect to the breach of contract claim, Plaintiffs allege that Prime

incorrectly concluded that the limit of the Policy was $50,000 instead of $100,000

and prematurely withdrew its defense of CLJ and Dodds based on that error.

Plaintiffs' negligence claim is similarly grounded in the belief that the Policy

limit was $100,000.  They claim that Prime failed to accept a "proper demand" for

that amount.  The Complaint also alleges that Prime and Claims Direct failed to

inform CLJ of Hal Jenkins' demand to settle for the Policy limit and to explain that

CLJ had the option to fund the demand from its own sources.

Defendants argue that Plaintiffs fail to state a claim because (i) a plain reading of the Policy shows that the limit was in fact $50,000; and (ii) in any event, Plaintiffs' claims are barred by the doctrine of res judicata[5] because the court in the Utah Action found that the Policy limit was $50,000 (the "Utah Judgment").[6]

According to Defendants, the doctrine of collateral estoppel applies here because the Policy limit was the central issue in the Utah Action; the issue was litigated and decided by the Utah court; and CLJ was a party to the Utah Action. The Utah Judgment was subsequently domesticated in the Superior Court of Cobb County in 2019 (the "Georgia Judgment").

Plaintiffs challenge Defendants' conclusion as to the Policy limit and assert that neither the Utah Judgment nor the Georgia Judgment has preclusive effect

_____

[5] Defendants refer to "res judicata" and "collateral estoppel" interchangeably with respect to this argument. While such practice is common, it "lumps under a single name two quite different effects of judgments." *Res judicata*, *Black's Law Dictionary* (11th ed. 2019) (internal punctuation omitted). Res judicata refers to "the effect of foreclosing any litigation of matters that never have been litigated, because of the determination that they should have been advanced in an earlier suit." *Id*. Collateral estoppel refers to "preclusion of matters that have once been decided." *Id*. Given the nature of Defendants' argument, the Court will use "collateral estoppel" herein.

[6] The Court may take judicial notice of pleadings filed in another case on a motion to dismiss. *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013); Fed. R. Evid. 201(b). This does not require the Court to convert the motion to dismiss into one for summary judgment. *See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).

here because they are invalid.  Plaintiffs have filed an action in the Superior Court of Cobb County to set aside the Georgia Judgment (the "Vacatur Action").

The Court first turns to the question of whether the doctrine of collateral estoppel operates to bar litigation of the Policy's limit.   Courts in the Eleventh Circuit Court of Appeals "give preclusive effect to the judgment of a state court provided that two conditions are met:  (1) the courts of the state from which the judgment emerged would do so themselves; and (2) the litigants had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process."  *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003).  Thus, with respect to the first factor, the Utah Judgment will be evaluated under Utah law, and the Georgia Judgment will be evaluated under Georgia law.  *See*, *e.g.*, *Ames v. J.P. Morgan Chase Bank, N.A.*, 623 F. App'x 983, 986 (11th Cir. 2015) ("Because a Georgia court entered the state-court [j]udgment, we apply the Georgia law of res judicata and collateral estoppel.").

**The Utah Judgment**

Under Utah law,

[t]he party seeking to invoke [the] doctrine [of issue preclusion] must satisfy four requirements.  First, the party must show that the issue challenged in the case at hand is identical to the issue decided in the previous action.  Second, the issue in the previous action must have

> been decided in a final judgment on the merits.  Third, the issue in the
> previous action must have been competently, fully, and fairly
> litigated.  Fourth, the opposing party in the action at hand must have
> been either a party or privy to the previous action.

*Sevy v. Sec. Title Co. of S. Utah*, 902 P.2d 629, 632 (Utah 1995).  Plaintiffs do not

appear to dispute that the first and fourth factors are satisfied here.  The parties'

disagreement centers on the second and third factors.

Plaintiffs argue that the Utah Judgment should not be given preclusive effect

because, among other reasons, it is a default judgment that was not fully or fairly

litigated on the merits.[7]

Defendants, on the other hand, cite *Schoney v. Memorial Estates, Inc.*, 863

P.2d 59 (Utah Ct. App. 1993), as support for their argument that Utah courts accept

a default judgment as satisfying the second and third prongs of the collateral

estoppel test.  Therefore, they conclude that all conditions for precluding further

litigation of the Policy limit are satisfied in this case.

The Court disagrees that *Schoney* provides clear guidance as to the

preclusive effect of a default judgment.  In that case, default judgment was entered

against a ***plaintiff*** who, according to the court, "had her day in court before the trial

court and the court of appeals, and the supreme court denied review."  *Id*. at 61.

---

[7] It appears Plaintiffs have made similar arguments to the Cobb County court in the
Vacatur Action.

Although Defendants are correct that the court found that the doctrine of res judicata applied in that circumstance, the court did not address the specific issue of whether a default judgment may be considered a full and fair resolution on the merits for all purposes, including where a ***defendant*** has not participated at all in the proceedings.  *Id*.  Accordingly, the Court declines the invitation to rely on *Schoney* for a conclusion here that the Utah Judgment satisfied factors two and three of the collateral estoppel test.  Defendants have not cited any other cases that are on point, and the Court has found none.

In light of the Court's grant of Defendants' Motion to Transfer (*see* section II(B), *infra*), the Court defers ruling on this unsettled question of Utah law and leaves the question for the Utah district court, which is arguably better positioned to address it.

### The Georgia Judgment

> Under the doctrine of res judicata, a judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters which were put in issue . . . until such judgment [is] reversed or set aside.  . . . .  Questions between parties once and finally settled by a final judgment must be considered as ending the litigation as to those matters as between those parties.  They cannot be relitigated in other actions either directly or indirectly.

*Ga. Farm Bldgs., Inc. v. Willard*, 299 S.E.2d 181, 182 (Ga. Ct. App. 1983) (internal citations and punctuation omitted).  "[A] judgment sought to be used as a

basis for the application of the doctrine of res judicata (or collateral estoppel) must be a final judgment," and it is "not final as long as there is a right to appellate review." *CS-Lakeview at Gwinnett, Inc. v. Retail Dev. Partners*, 602 S.E.2d 140, 142 (Ga. Ct. App. 2004). Therefore, in determining whether the res judicata defense applies, a "federal court should take into consideration the possibility of a reversal of [the state court] judgment" and "may properly stay proceedings before it until a final termination of the proceedings in the state court." *Ray v. Hasley*, 214 F.2d 366, 368 (5th Cir. 1954) (reversing the district court's dismissal of a case on res judicata grounds because the state court judgment underlying the res judicata defense was under appeal).

In this case, the record shows that CLJ and Dodds have exercised their right to seek to vacate the Georgia Judgment. That Vacatur Action is still pending and calls into question the finality of the Georgia Judgment. As such, it would be inappropriate for the Court to rely on the Georgia Judgment for a collateral estoppel defense at this time. *See id*. This is an additional reason for the Court's deferral of a ruling on Counts Three and Four of the Complaint.[8]

---

[8] Given the open questions as to the preclusive effect of the Georgia and Utah Judgments, the Court finds that it is not appropriate to reach the merits of Defendants' alternate argument that the Policy did in fact provide only $50,000 in coverage.

### 3.    Count Five (Unauthorized Sale of Surplus Lines Insurance as to Prime and Evolution)

Plaintiffs allege that Prime and Evolution violated Georgia law by selling insurance in Georgia (to CLJ), even though Evolution was not authorized to do so. They additionally allege that CLJ was not provided with the disclosures required under Georgia law, and the Policy was not filed with or approved by the Georgia Commissioner of Insurance pursuant to O.C.G.A. § 33-24-9.

Defendants, however, contend that Plaintiffs have failed to state a claim because section 33-24-9 does not provide a private cause of action.

Instead of responding to this argument or otherwise identifying the authority under which they bring this cause of action, Plaintiffs merely reiterate the allegations in the Complaint and state in conclusory fashion that the claim is viable.  This is not sufficient to carry their burden.  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (finding that "[a] passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *Jones v. Bank of America, N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (agreeing with the district court's conclusion that "when a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned"). Accordingly, Count Five of the Complaint is dismissed.

19

4.    **Count Six (Punitive Damages) and Count Seven (Attorneys' Fees)**

The viability of Counts Six and Seven is contingent on whether Counts Three and Four survive Defendants' Motion.  Because the Court has reserved ruling on Counts Three and Four, it will likewise reserve ruling on Counts Six and Seven.

B.    **Request to Transfer**

Defendants ask the Court to transfer the action to the District of Utah, pursuant to 28 U.S.C. § 1404(a), "only if [their Motion] is not granted in whole." They argue that transfer is required because *Atlantic Marine Construction Company, Inc. v. United States District Court* requires the Court to give "controlling weight" to the Utah forum selection clause in the Policy.  571 U.S. 49, 63 (2013).  In Defendants' view, *Atlantic* also requires the Court to disregard any private factor considerations that Plaintiffs may raise in opposition to transfer (*e.g.*, the convenience of the parties) and permits the Court to deny transfer only in exceptional cases involving public policy concerns.

Plaintiffs respond that the Policy's forum selection clause is invalid due to "fraud or overreaching."  They claim the Policy was not sold in accordance with Georgia insurance laws, and Dodds neither understood the effect of the forum selection clause nor had an opportunity to negotiate it.

Additionally, Plaintiffs assert that public policy considerations weigh against enforcing the clause because enforcement would require Plaintiffs to "litigate against a rogue insurer in a distant forum." They also argue that the private interest factors (*e.g.*, the convenience of witnesses) weigh against transfer.

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the Supreme Court explained in *Atlantic*, "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." 571 U.S. at 62. The court is required to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id*. at 62-63.

However, "when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum[,]" it "should be given controlling weight in all but the most exceptional cases." *Id*. "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. at 63. Therefore, the plaintiff's choice of forum is accorded no

weight, and the burden is placed on the party opposing the transfer to show that transfer to the bargained-for forum is unwarranted.  *Id*.  The court also does not consider any arguments regarding the parties' private interests because by agreeing to a forum-selection clause, the parties are deemed to have waived the right to argue that such forum is inconvenient or less convenient.  *Id*. at 64.

In other words, the district court may consider only arguments relating to the public interest factors.  Those factors include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"  *Id*. at 63 n.6.  Even then, "those factors will rarely defeat a transfer motion" where the underlying agreement identifies the transferee forum as the proper place for the action.  *Id*. at 64.  In sum, a district court may refuse to transfer a case notwithstanding the counterweight of a forum-selection clause only in "unusual" or "exceptional" cases.  *Id*. at 64.

Here, the Court is not persuaded by Plaintiffs' argument that the forum selection clause was obtained by fraud or overreach.  "'In order to prove fraud, a plaintiff must establish five elements:  (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by [the] plaintiff, and (5) damage to [the] plaintiff.'"  *Engelman*

*v. Kessler*, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017).  Yet, Plaintiffs have not pointed to any false representation in connection with the execution of the Policy. To the contrary, the record shows that Dodds signed annual insurance policies issued by Prime containing the same forum selection clause from 2008 to 2012.  A purported misunderstanding of the terms of the Policy is not an excuse to void it. *See Rollins v. LOR, Inc.*, 815 S.E.2d 169, 183 (Ga. Ct. App. 2018) (finding that the trustees were bound by the agreements they signed despite their testimony that "they were not given, did not understand, or did not read" them); *Trulove v. Woodmen of World Life Ins. Soc.*, 419 S.E.2d 324, 327 (Ga. Ct. App. 1992) (stating that "one signing a document has a duty to read it and is bound by the terms of a document he does not read").  Accordingly, Plaintiffs fraud or overreach argument fails.

Plaintiffs' public interest argument similarly lacks merit.  Plaintiffs are correct that the Georgia General Assembly has declared

> a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under those policies.

O.C.G.A. § 33-5-51.  However, the remedy provided for this concern is a mechanism for service of process on the out-of-state insurers and does not involve

23

voiding the policy (or a clause within such policy).  *See*, *e.g.*, § 33-5-53.  Thus, the Court finds that the policy stated in section 33-5-51 does not represent the "unusual" or "exceptional" circumstance sufficient to override the "controlling weight" of the Policy's forum selection clause.

Although Plaintiffs have not addressed any of the public interest factors enumerated in *Atlantic*, the Court notes that the consideration of having matters decided in a forum that is at home with the law is significant where, as here, the issue preclusion argument turns on an unsettled area of Utah law.

For all these reasons, the Court finds that transfer of this case to the District of Utah is appropriate.

In conclusion, the Court **GRANTS** Defendants' Motion (ECF No. 4) with respect to Counts One, Two and Five of Complaint.  With no further claims pending against McBride and Evolution, the Clerk is **DIRECTED** to terminate them from this case.  The Court also **GRANTS** Defendants' request to transfer, and the Clerk is **DIRECTED** to transfer the case to the District of Utah.

**SO ORDERED** this 3rd day of March, 2021.

J. P. BOULEE
United States District Judge