Andrew D. Wright, #8857
Andrew B. McDaniel, #11070
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
Telephone:  (801) 532-7080
Facsimile:   (801) 596-1508
awright@strongandhanni.com
amcdaniel@strongandhanni.com
*Attorneys for Defendants*

Randall A. Smith (Pro Hac Vice)
Smith & Fawer, LLC
201 St. Charles Avenue, Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
rasmith@smithfawer.com
*Attorneys for Defendants*

Brian W. Sprinkle (Pro Hac Vice)
Hawkins Parnell & Young, LLP
303 Peachtree Street, NE, Suite 4000
Atlanta, GA 30308
Telephone: (404) 614-7504
bsprinkle@hpylaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| HAL JENKINS, as assignee of certain of the claims of CLJ HEALTHCARE, LLC and CLJ HEALTHCARE, LLC, as to certain non-assigned claims,<br><br>        Plaintiffs,<br><br>v.<br><br>PRIME INSURANCE CO., PRIME HOLDINGS INSURANCE SERVICES, INC., d/b/a CLAIMS DIRECT ACCESS, DAVID MCBRIDE, ESQ., and EVOLUTION INSURANCE BROKERS, L.C.,<br><br>        Defendants. | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.:  2:21-cv-00130- DAK-DAO<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

## INTRODUCTION AND RELIEF REQUESTED

Defendants Prime Insurance Company ("Prime") and Prime Holdings Insurance Services, Inc., d/b/a Claims Direct Access (collectively referred to as "Defendants"),[1] by and through counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and DUCivR 56-1, hereby submit this Motion for Summary Judgment. For the reasons set forth below, Defendants request that this Court grant their Motion and dismiss the two remaining causes of action in this case for breach of contract and negligence.

## BACKGROUND

Plaintiffs' remaining causes of action fail for multiple reasons. Plaintiffs' Count Three (breach of contract) is based on allegations Plaintiffs are estopped from asserting based on this Court's prior ruling about the preclusive effect of the Utah State Court's declaratory judgment ruling. Plaintiffs' Count Four (negligence) is based on allegations of improper claims handling. However, Utah law does not recognize a claim for negligent claims-handling. Even if that claim is treated as a properly-pleaded contract-based cause of action, and/or a claim for breach of fiduciary duty/bad faith, the claim is barred by the applicable statute of limitations and is otherwise defective.

This case arises out of a professional liability policy of insurance issued by Prime to CLJ Healthcare, LLC ("CLJ"), which had a professional liability limit of $50,000 and an aggregate limit of $100,000. Dr. Nedra Dodds ("Dodds"), a member of CLJ, performed a liposuction procedure on April Jenkins on February 19, 2013. Jenkins died following the procedure.

---

[1] All other Defendants were previously dismissed in prior proceedings in Georgia before the case was transferred to this Court.

Thereafter, Hal Jenkins (April Jenkins' father) filed suit against CLJ and Dodds. Prime defended CLJ and Dodds under a reservation of rights and tendered the policy limit of $50,000 to Hal Jenkins, but Jenkins, through counsel, refused to accept the tender. The refusal was based in part on Jenkins' contention that the policy should provide $100,000 in coverage, not $50,000. Jenkins also contended Prime should have tendered its policy limit earlier than it did.

Prime continued to defend CLJ and Dodds until the policy was exhausted by defense costs such that Prime's duty to defend and indemnify ended. Prime then withdrew its defense pursuant to court order and Jenkins ultimately obtained a default judgment and later an uncontested damages judgment against CLJ in the amount of $60,000,000.

Concurrently, Prime filed a declaratory judgment action in Utah state court against CLJ and Dodds to confirm the limit of coverage under the Policy for the Jenkins claim. CLJ and Dodds chose not to respond to the complaint and the Utah court ultimately entered an Order declaring Prime had no obligations beyond the $50,000 limit applicable to the Jenkins claim, and that the limit had been fully exhausted in the defense of that claim.

Nearly a year later, Plaintiffs initiated the present action in Georgia state court, asserting several claims against multiple defendants in an attempt to recover the $60,000,000 judgment. That case was subsequently removed to Georgia federal court and Counts One, Two and Five of the complaint were dismissed, along with Defendants David McBride and Evolution Insurance Brokers, LC. The Georgia court deferred ruling on the remaining causes of action and transferred the case to this Court.

On a motion to dismiss, this Court dismissed Counts Six and Seven and found that Plaintiffs could only proceed on the two remaining claims, Count Three (Breach of Contract) and

Count Four (Negligence), but solely with respect to any "bad faith" theories related to those claims. The Court further held that Plaintiffs cannot relitigate the fact that the policy limit applicable to the Jenkins claim was $50,000, or that the limit had been properly exhausted in the defense of that claim.

In light of this Court's determination and the undisputed facts of this case, Plaintiffs' remaining causes of action fail as a matter of law and should now also be dismissed. Plaintiffs' Count Three (breach of contract) centers on allegations that Prime wrongfully asserted the applicable Policy limit was $50,000, and that Prime prematurely and wrongfully withdrew its defense once it asserted that the $50,000 had been spent. However, in light of this Court's prior ruling about the preclusive effect of the Utah State Court's declaratory judgment, Plaintiffs are estopped from asserting those arguments. Not only has it been determined that the $50,000 was the applicable limit, it has also been determined that the $50,000 was exhausted in CLJ's defense and that Prime was therefore entitled to withdraw its defense. Accordingly, Plaintiffs have no basis to assert that Prime wrongfully withdrew its defense of the Jenkins claim, and the breach of contract claim should therefore be dismissed.

Plaintiffs' Count Four (negligence) fails for multiple reasons. First, Utah does not recognize a "negligence" cause of action for improper claims handling *before* the filing of the Jenkins lawsuit. Such claims sound only in contract under Utah law. As such, it fails as a matter of law as pleaded. To the extent Plaintiffs Count Four (negligence) is treated as a contract-based breach of the implied covenant of good faith and fair dealing ("bad faith") claim, such a claim would be barred by the applicable six-year statute of limitations. In addition, because Plaintiffs

cannot show Prime breached any express term of the Policy, as noted above, Plaintiffs cannot establish a breach of the implied covenant claim.

Further, Utah law treats claims relating to claims handling *after* the filing of the Jenkins lawsuit as a breach of a fiduciary duty claim, sometimes called third-party bad faith. To the extent Plaintiffs' Count Four (negligence) is treated as a breach of fiduciary duty/third-party bad faith claim, the Georgia court has already dismissed Plaintiffs' breach of fiduciary duty claims as being time-barred under the applicable four-year statute of limitations. Accordingly, whether Plaintiffs' Count Four is treated as a negligence, implied covenant, or fiduciary duty/third-party bad faith claim, it fails as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

All record evidence and citations included below are contained in the concurrently filed Appendix of Evidence, as required by DUCivR56-1(b)(3).

### A.  The Policy:

1.    Prime issued professional liability insurance coverage to CLJ in the form of Policy No. SC1212726, with a policy period of December 22, 2012 through December 22, 2013 (the "Policy"). (*See* Pls.' Compl., ¶8, Ex. 1 in the Appendix of Evidence; *see also* Policy, Ex. 2 in the Appendix of Evidence.)

2.    The Policy set forth a Professional Liability limit of $50,000 and an Aggregate Limit of $100,000. (*See* Policy, Declarations Page, Ex. 2 in the Appendix of Evidence.)

3.    The Policy explains as follows with respect to Prime's defense obligations:

### SECTION I – COVERAGE

A.        Insuring Agreement

. . .

2.     We have both the right and the duty to provide for your defense with respect to a Claim covered by the Policy. We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense. Notwithstanding anything to the contrary, our duty to provide for such defense will immediately terminate:

    a.     When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

(*See id.,* pp. 2-3.)

4.     The Policy also sets forth the following "Governing Law" and "Consent to Exclusive Jurisdiction" provisions (the "forum selection clause"):

## SECTION IX— GOVERNING LAW

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

## SECTION X — CONSENT TO EXCLUSIVE JURISDICTION

The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management and claims services within the State of Utah. The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah. The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy. In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

(*See id.*, p 17.)

### B.  The Jenkins Claim:

5.      On February 19, 2013, April Jenkins died after a liposuction procedure performed at CLJ. (*See* Pls.' Compl., ¶¶20-21, Ex. 1 in the Appendix of Evidence.)

6.      On August 5, 2013, Hal Jenkins, as next of kin and administrator of April Jenkins' estate, filed suit against CLJ and Dodds, seeking to recover damages arising out of her death (the "Jenkins claim"). (*See id.*, ¶31.)

7.      Prime defended CLJ and Dodds in that action, under a reservation of rights. (*See id.* at 39, 48; Reservation of Rights Ltr., Ex. 3 in the Appendix of Evidence.)

8.      Prime engaged in settlement discussions with Mr. Jenkins' attorney both before and after suit was filed, but the sides were unable to reach a settlement agreement. (*See* Pls.' Compl., pp. 5-9, Ex. 1 in the Appendix of Evidence.)

9.      Upon learning of the filing of the Jenkins lawsuit, Prime tendered the $50,000 policy limit on August 13, 2013, which tender was refused. (*See* Pl.'s Compl., ¶33, Ex. 1 in the Appendix of Evidence.)

10.     After exhausting the available limits in the defense of Dodds and CLJ, defense counsel was allowed to withdraw by court order dated July 8, 2014. (*See id.*, ¶54.)

11.     After CLJ permitted an uncontested judgment to be entered against it, the case proceeded to trial and a jury awarded Jenkins $60,000,000 on December 18, 2018. (*See id.* at ¶¶55-58.)

### C.  The Utah Declaratory Judgment Action:

12.    On January 27, 2015, Prime filed a declaratory judgment action in the Third Judicial District Court of Salt Lake County, State of Utah, styled as *Prime Insurance Company v. Nedra Dodds, M.D. and CLJ Healthcare, LLC d/b/a Opulence Medicine*, Case No. 150900592 (the "Declaratory Judgment Action"). (*See* Declaratory Judgment Complaint, Ex. 4 in the Appendix of Evidence.)

13.    After CLJ and Dodds chose not to appear in that action, on March 19, 2019 the Utah court entered an order granting Prime's Motion for Default Judgment.[2] As part of that Order, the Court concluded that the $50,000 Professional Liability limit applied to the Jenkins claim, and that the entire limit had been exhausted in the defense of that claim. (*See* Order Granting Motion for Default Judgment, Ex. 5 in the Appendix of Evidence.)

### D.  The Present Action:

14.    On or about March 10, 2020, Hal Jenkins, as the assignee of CLJ, and CLJ initiated the present action in Georgia state court, seeking to recover the $60,000,000 judgment and other damages. (*See* Pls.' Compl., Ex. 1 in the Appendix of Evidence.)

15.    That action was subsequently removed to the United States District Court, Northern District of Georgia. Defendants filed a Motion to Dismiss and Counts One, Two and Five of Plaintiffs' complaint were dismissed, along with Defendants McBride and Evolution Insurance Brokers, LC. (*See* March 3, 2021 Order, Ex. 6 in the Appendix of Evidence.)

---

[2] Litigation of the declaratory judgment action was delayed as a result of Dr. Dodds filing personal bankruptcy.

16.     The Georgia court deferred ruling on the remaining causes of action, finding that a Utah court was better positioned to determine the controlling question of whether Prime's default judgment has a preclusive effect on those claims. As such, the case was transferred to this Court for a determination on those remaining claims. (*See id.* at 17, 20, 24.)

17.     In an Order dated August 23, 2021, this Court dismissed Counts Six and Seven of Plaintiffs' complaint. The Court also found that Plaintiffs could only proceed on the two remaining claims, Count Three (breach of contract) and Count Four (Negligence), but solely with respect to any "bad faith" theories related to those claims. (*See* Memorandum Decision and Order, p. 21, Dkt. 85.)

18.     This Court further held that "Plaintiffs are precluded from relitigating the applicable policy limit of $50,000 or whether that policy has been exhausted." (*See* Memorandum Decision and Order, p. 22, Dkt. 85.)

## **ARGUMENTS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact." *Tesone v. Empire Mktg. Strategies,* 942 F.3d 979, 994 (10th Cir. 2019). If the motion is properly supported, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations and alterations omitted). In the case at hand, the undisputed material facts establish that Plaintiffs' remaining causes of action should be dismissed.

**A.  The remaining claims must be considered in accordance with Utah law.**

Utah law must be considered in determining the viability of Plaintiffs' remaining causes of action. As set forth above, the Policy contained forum selection and choice of law clauses which establish that all disputes relating to coverage under the Policy should be determined by a Utah court, in accordance with Utah law. (*See* Policy, p. 17, Ex. 2 in the Appendix of Evidence.) The Georgia court found the forum selection clause to be valid and enforceable and transferred the case to this Court for a determination of the remaining causes of action under Utah law. This Court has likewise determined that the forum selection clause is enforceable. (*See* Memorandum Decision and Order, p. 19, Dkt. 85.) Inasmuch as the forum selection and choice of law clauses establish that disputes arising out of the Policy should be determined in accordance with Utah law, and Plaintiffs' remaining claims are based on alleged breaches of duties arising out of the Policy, the following issues should be determined in accordance with Utah law.

**B. Plaintiffs' Count Three (breach of contract) fails as Plaintiffs cannot establish an express breach of contract given the Utah state court's declaratory judgment and this Court's ruling that Plaintiffs are bound by the same.**

Count Three of Plaintiffs' Complaint alleges Prime breached the insurance contract by "wrongfully assert[ing] that the limits of the Policy . . . was $50,000" and by "prematurely and wrongfully withdr[awing] its defense of the Jenkins claim once it asserted that $50,000 had been spent on the defense." (*See* Pls.' Compl., ¶¶87, 89, Ex. 1 in the Appendix of Evidence.) However, those issues were already determined in the Utah Declaratory Judgment Action, and this Court has ruled that those issues cannot be relitigated.

Specifically, in the Utah Declaratory Judgment Action, the court found that the $50,000 liability limit applied to the Jenkins claim, and that because Prime had exhausted that limit it had no further obligations with respect to the Jenkins lawsuit, including any further defense or indemnification obligations. (*See* Order Granting Motion for Default Judgment, p. 2, Ex. 5 in the Appendix of Evidence.) In its Memorandum Decision and Order based on Defendants' Motion to Dismiss Deferred Causes of Action, this Court then determined that those issues had been fully and fairly litigated, and because CLJ had been served with the complaint, Policy, and other relevant documents in the Declaratory Judgment Action, yet CLJ chose not to respond, "the court feels those issues are properly excluded from relitigation in this context." Therefore, "Plaintiffs are precluded from relitigating the applicable policy limit of $50,000 or whether that policy has been exhausted." (*See* Memorandum Decision and Order, pp. 13-16, 22, Dkt. 85.) Accordingly, Plaintiffs cannot argue that Prime improperly withdrew its defense upon the exhaustion of those limits and there are no remaining grounds for Plaintiffs' breach of contract claim. Count Three should therefore be dismissed as a matter of law.

### C. Plaintiffs' Count Four (negligence) claim, as alleged, fails as a matter of law.

Utah permits two types of claims for improper claims handling in the context of third-party claims. First, Utah recognizes a breach of the covenant of good faith and fair dealing claim – clearly a contract-based claim rather than a tort-based claim – for improper claims handling that occurs *before* the filing of a third-party lawsuit. Second, Utah recognizes a breach of fiduciary duty claim for improper claims handling that occurs *after* a third-party suit is filed. This cause of action is sometimes referred to as "third-party bad faith." In this case, Plaintiffs have framed their claims-handling cause of action as one for "negligence." Such a cause of action is not recognized

in Utah – indeed allowing a negligence claim in this context would violate the economic loss doctrine[3] – and Plaintiffs' Count Four (negligence) should be dismissed on this basis.

To the extent the Court treats Plaintiffs' Count Four (negligence) claim as a breach of the implied covenant claim based in contract as it relates to pre-suit claims-handling, even though it is not stated that way, such a claim would still be defective as the six-year statute of limitations for a contract cause of action expired prior to the filing of this suit. Moreover, such a cause of action would not survive summary judgment because, as discussed below, where Plaintiffs cannot establish a breach of express contract, any derivative claim for breach of an implied covenant cannot survive.

To the extent the Court instead treats Plaintiffs' Count Four (negligence) claim as a breach of fiduciary duty/third-party bad faith claim, even though it is not stated that way, the Georgia court has already dismissed Plaintiffs' Count Two (breach of fiduciary duty), which was based on the same factual allegations. Accordingly, whether treated as a negligence claim, a breach of implied covenant claim, or a breach of fiduciary duty claim, Plaintiffs' Count Four (negligence) claim fails as a matter of law.

1. **Utah does not recognize a cause of action for "negligence" for improper claims handling.**

As set forth more fully in the sections below, Utah courts reject a negligence-based approach and recognize claims only for breach of contract (for alleged claim mis-handling before suit is filed) and breach of fiduciary duty (for alleged claims mis-handling after suit is filed). As

---

[3] The economic loss doctrine provides generally that economic losses may not be recovered for a nonintentional tort "when a contract covers the subject matter of the dispute." *See Reighard v. Yates*, 2012 UT 45, ¶20, 285 P.3d 1168.

such, as an initial matter, because Plaintiff's Count Four (negligence), as framed, is not recognized under Utah law, the cause of action must be dismissed as a matter of law.

### 2. To the extent Plaintiff's Count Four (negligence) is treated as a claim for breach of the implied covenant of good faith and fair dealing, such a claim is barred by Utah's six-year statute of limitations.

If the Court decides to treat Plaintiffs' Count Four (negligence) as a claim for breach of the implied covenant of good faith and fair dealing as it relates to pre-suit claims handling, even though it is not pleaded this way, the claims-handling conduct that occurred prior to the filing of the Jenkins lawsuit on August 5, 2013 would be governed by contract law. Such a claim would be barred by the applicable six-year statute of limitations.

Utah courts have made clear that alleged improper claims handling that occurs prior to the filing of a third-party lawsuit provides a cause of action in contract, not tort. In *Black v. Allstate*, 100 P.3d 1163 (Utah 2004), the Utah Supreme Court considered the different duties that were owed between an insurer and an insured both before and after the filing of a third-party lawsuit against the insured, and the causes of action potentially created by those duties. The court made clear that, during the investigative phase of a claim, the insurer's duties are based in contract and therefore can only give rise to contractual causes of action. The court specifically stated that "[o]nly upon the initiation of formal legal proceedings does the insurer undertake a fiduciary duty to defend its insured by appointing counsel and thereafter zealously protecting the interests of its insured in defending or negotiating settlement of the action." *Id.* at ¶ 27. The court noted that "[w]hile we recognize that, in insurance matters, much of the negotiation and settlement of claims occurs prior to the filing of a formal complaint, during this pre-litigation phase, the insured has not yet 'relinquished any right to negotiate on its own behalf" and "the insured has not yet been

exposed to a judgment and personal liability in excess of the policy limits." *Id. (*quoting *Ammerman v. Farmers Ins. Exch.* 19 Utah 2.d 261, 265-66 (Utah 1967)*.* The court concluded that, prior to the filing of a formal lawsuit, breach of an insurer's duties in handling third party claims may give rise only to a cause of action in contract, not tort. *See id.* The court specifically declined to apply a fiduciary duty/third-party bad faith analysis to claims handling that occurred prior to the formal filing of the third-party lawsuit. *Id.* ¶¶ 26-27. Accordingly, with respect to conduct that occurred prior to the filing of the Jenkins lawsuit, it is clear under Utah law that any cause of action arising from such conduct is a contract-based claim.[4]

In Count Four, Plaintiffs allege Prime incorrectly determined the Policy limit to be $50,000 instead of $100,000; that Prime failed to inform CLJ of the Jenkins settlement demand; that Prime did not advise CLJ it could contribute its own funds towards the settlement; and that Prime did not promptly settle the claim before the filing of the Jenkins lawsuit. In Utah, with the exception of policies for first-party insurance,[5] "actions on insurance policies" must be brought within six years. *See* Utah Code Ann. § 31A-21-313(2); Utah code Ann. § 78B-2-309(1)(b). Furthermore, under Utah law a contract action accrues at the time of the alleged breach. *See CounselNow, LLC v. Deluxe Small Business Sales, Inc.*, 430 F. Supp. 3d 1247, 1254-55 (D. Utah 2019). In this case, there have been no developments that would have tolled the statute of limitations. Accordingly, the statute of limitations on any contract-based bad faith claim expired no later than August 5, 2019, six years from the date the Jenkins suit was filed, as any bad faith conduct occurring after

---

[4] This applies with respect to both CLJ and Jenkins, as Jenkins in this case is stepping into the shoes of CLJ (the insured) as an assignee. (*See* Pls.' Compl., p. 1, Ex. 1 in the Appendix of Evidence.)

[5] Such claims involve a three-year statute of limitations.

the Jenkins suit was filed would give rise to a claim for breach of fiduciary duty claim instead of a contract claim, as discussed more below. Plaintiffs did not file the present action until March 10, 2020, more than seven months after the statute of limitations expired. Accordingly, regardless of what it is called, any claim based on alleged bad faith conduct arising on or before August 5, 2013 fails as a matter of law.

3. **To the extent the Court treats Plaintiffs' Count Four (negligence) as a claim for breach of the implied covenant of good faith and fair dealing, such a claim would fail as a matter of law because Plaintiffs cannot establish a breach of the express contract.**

As set forth above, Plaintiffs cannot establish an express breach of the Policy because this Court has already determined that Plaintiffs are bound by the Utah State Court's determination that the policy limit was $50,000, that Prime incurred $50,000 in defense costs, and that Prime satisfied its obligations under the Policy. As the Utah State Court stated "Prime has no obligation to defend or indemnify Dr. Dodds and/or CLJ in the Jenkins claim beyond the $50,000 Professional Liability Limit applicable to that claim." The court then ruled that because Prime had indeed incurred in excess of $50,000 in defending the Jenkins claim, "it has no obligation to indemnify CLJ or Dr. Dodds for the judgment entered against them in the Jenkins lawsuit." (*See* Order Granting Motion for Default Judgment, p. 2, Ex. 5 in the Appendix of Evidence.)

Regardless of whether Count Four (negligence) claim sounds in tort or contract, the cause of action fails as a matter of law because there can be no extra-contractual liability if there has been no breach of the express contract. Under Utah law, when there is no breach of an express contract, "'there can be no cause of action for breach of an implied covenant arising therefrom . . .'" *Shiozawa v. Duke*, 2015 UT App 40, ¶27, n.6, 344 P.3d 1174 (citing *Craner v. Northwestern*

*Mut. Life Ins. Co.*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998).  In *Duke*, the Utah Court of Appeals found the district court had correctly granted summary judgment in favor of the defendants on the breach of contract claims. In light of that ruling, the court also held that "there can necessarily be no violation of the implied covenant of good faith and fair dealing" arising out of the same contract. *See id; see also Global Fitness Holdings, LLC v. Federal Recovery Acceptance, Inc*., 2015 WL 5918401, *3 (D. Utah 2015) ("where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom") (citing *Asael Farr & Sons Co. v. Truck Ins. Exch.,* 193 P.3d 650, 662 (Utah Ct. App. 2008); *see also Vander Veur v. Groove Entm't Techs.*, 2019 UT 64, ¶ 10, 452 P.3d 1173, 1178 (implied covenant of good faith cannot "establish new, independent rights or duties to which the parties did not agree") (citations omitted).

The Utah Supreme Court has relatedly observed that "we will not use this [implied] covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract."  *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004).  Moreover, "we will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves. Nor will we construe the covenant to establish new, independent rights or duties not agreed upon by the parties.'"  *Malibu Investment Co. v. Sparks*, 996 P.2d 1043, 1048 (Utah 2000).

Indeed, "a claim for breach of the covenant of good faith and fair dealing is a derivative of the breach of contract claim." *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 19, 342 P.3d 224, 231 (holding also that because the plaintiff "did not allege the existence of facts required to

plead a breach of contract, it has also failed to plead a breach of the covenant of good faith and fair dealing.").

Consistent with these principles, there have been multiple cases in this district finding that when coverage is precluded for a claim under an insurance policy, any bad faith claims arising out of the insurer's denial of coverage fail as a matter of law. *See e.g. Allegis Investment Services LLC v. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 999 (D. Utah 2019) (finding that the absence of coverage precluded the bad faith claim as a matter of law); *Ctr. for Excellence in Higher Educ., Inc. v. RSUI Indem. Co.*, 375 F. Supp. 3d 1217, 1229-30 (D. Utah 2019) (finding summary judgment dismissing bad faith claim was appropriate because reasonable minds could not differ on that claim inasmuch as court had determined the insurer had properly denied coverage); *8655 North Cove LLC v. Am. Fam. Ins. Co.*, No. 2:12CV237DAK, 2014 WL 2777467, at *4 (D. Utah June 19, 2014) (unpublished) (insurer could not have breached the implied covenant because the undisputed facts showed there was no coverage under the policy).

As established above, there can be no express breach of contract because this Court has already decided that the prior court's ruling that the applicable $50,000 limit had been exhausted cannot be relitigated.  Accordingly, this Court found that Plaintiffs could only proceed on their "bad faith theories." Specifically, those theories related to (1) failing to respond to Mr. Jenkins' initial demand; (2) failing to communicate to CLJ that it could contribute its own funds towards settlement; (3) improperly depleting the liability limits; and (4) failing to advise CLJ that it could challenge Prime's assertions of the coverage amounts. (*See* Memorandum Decision and Order, pp. 6-7, 21, Dkt. 85.) However, this Court has already found that the issue of exhaustion of the limit cannot be relitigated, and the remaining "bad faith theories" are not based on any obligations

expressly set forth in the Policy. Plaintiffs have no basis to claim that Prime had such duties, notwithstanding the lack of any contractual provision that would give rise to such duties. Indeed, the Policy establishes that Prime has the right, "but not the duty," to settle a claim. (*See* Policy, p. 2, Ex. 2 in the Appendix of Evidence.) Permitting Plaintiffs to proceed on those theories would be establishing new independent rights to which the parties did not agree under the Policy. Accordingly, since there has been no express breach of the subject Policy, there can be no extra-contractual liability arising out of the Policy, and Plaintiffs' Count Four (negligence) claim fails on this basis.

4. **To the extent the Court treats Plaintiffs' Count Four (negligence) as a breach of fiduciary duty/third-party bad faith claim, such a claim also fails because it has already been dismissed by the Georgia court as time-barred.**

In the event the Court decides to treat Plaintiffs' Count Four (negligence) claim as a fiduciary duty/third-party bad faith claim, as established above, such a claim would only be viable with respect to Prime's claims-handling conduct after the Jenkins suit was filed on August 5, 2013. With respect to claims-handling conduct that occurs *after* suit is filed, it is true that "different considerations are present in the third-party context which compel the recognition of a tort cause of action." In that context, "an insurer is obligated to defend the insured against claims by others. Thus, the insurer owes a fiduciary duty to its insured . . ." *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 138 (Utah Ct. App. 1992) (emphasis added) (internal citations and quotations omitted). In this third-party context, the insurer controls the disposition of the claims against its insured. "The insurance contract thus creates a fiduciary relationship because of the trust and reliance placed in the insurer by its insured." *Id.* (Internal quotations omitted). Accordingly, "Utah law allows an insured to sue an insurer in tort to remedy a violation of that duty." *Id.* However,

this fiduciary duty only arises "upon the initiation of formal legal proceedings . . ." Until then,

when an insurer breaches its duties in handling third-party claims, the cause of action remains one

in contract, not tort. *See Black v. Allstate Ins. Co.*, 2004 UT 66, ¶27, 100 P.3d 1163.

Breach of fiduciary duty is the only third-party bad faith tort cause of action recognized

under Utah law:

> Because of the insurer's special role in the third-party context, an insured may state
> a cause of action in tort for an insurer's breach of its obligations.  Accordingly, Utah
> law allows an insured to sue an insurer in tort to remedy a violation of that duty.
> Thus a breach of the heightened duty of an insurer acting as a fiduciary in third-
> party cases renders the insurer answerable in tort to remedy a breach of that duty.

*Fire Insurance Exchange v. Oltmanns*, 416 P.3d 1148, 1160 (Utah 2018) (concurring opinion,

citations omitted).  This means that, "because a third-party insurance contract obligates the insurer

to defend the insured, the insurer incurs a fiduciary duty to its insured to protect the insured's

interests as zealously as it would its own; consequently, a tort cause of action [singular, not plural]

is recognized to remedy a violation of <u>that duty</u> [not a different, negligence-standard duty]." *Beck*

*v. Farmers Ins. Exchange*, 701 P.2d 795, 799 (Utah 1985) (emphasis added); *see also Savage v.*

*Educators Ins. Co.*, 908 P.2d 862, 865 (Utah 1995) ("we adopted a tort remedy in the context of

the third-party insurance contract because of the fiduciary nature of the relationship created by the

contract, we have specifically rejected the tort-based approach in the first-party context where the

relationship created by the insurance contract is not a fiduciary one.") (emphasis added); *General*

*Business Machines v. National Semiconductor Datachecker/DTS*, 664 F.Supp. 1422, 1425 (D.

Utah 1987) ("Utah case law seems likewise to recognize that breach of fiduciary duty is a

cognizable tort separate from a contract cause of action. … The fundamental distinction made by

the court was that tort recovery becomes available when there exists a fiduciary duty."). *See also*

*Black*, 2004 UT 66, ¶27 (finding that once legal proceedings have been initiated, the insurer owes its insured a fiduciary duty).

In the Count Four (negligence) cause of action, Plaintiffs allege that: Prime failed to accept a settlement demand (*See* Pls.' Compl., ¶94, Ex. 1 in the Appendix of Evidence); Prime failed to inform CLJ of settlement demands (*See id*., ¶ 95); and Prime acted on its own behalf and not on behalf of CLJ (*See id*., ¶ 96). In addition, by way of factual paragraphs incorporated into Count Four, Plaintiffs allege that: Prime inaccurately represented the Policy limits were $50,000 instead of $100,000 (*See id*., ¶¶ 26-27, 36-37); Prime failed to settle the case after the Jenkins suit was filed (*See id*., ¶¶ 32-35, 43); Prime failed to advise CLJ of the Policy's depleting limits and that it could tender its own funds to settle the case (*See id*., ¶¶ 38, 45, 51); that Prime asked its insured for a release after the Policy limit was depleted (*See id*., ¶ 50); and that Mr. McBride had a conflict of interest in advising CLJ (*See id*., ¶¶ 51-53).

The above allegations are in fact the same allegations set forth, or incorporated by reference, in Count Two (breach of fiduciary duty), which was dismissed by the Georgia court. Specifically, after reviewing the factual allegations set forth in Count One and Count Two of the Complaint, the Georgia court dismissed both causes of action as "time-barred because the Complaint was filed in March 2020 – more than four years after the [alleged claims-handling conduct] took place." (*See* March 3, 2021 Order, pp. 6-13, Ex. 6 in the Appendix of Evidence.)

Based on the foregoing, it is clear that the only tort remedy for an insurer's breach in the third-party context is the tort of breach of fiduciary duty, not negligence. If Plaintiffs' Count Four (negligence) cause of action is treated as stating a breach of fiduciary duty claim, such a claim has

already been dismissed.  Therefore, Plaintiffs' Count Four (negligence) claim also fails as a matter of law on that basis, separate and apart from the reasons set forth in the prior sections.

## **CONCLUSION**

Based on the foregoing, Defendants are entitled to summary judgment and respectfully request that Plaintiffs' remaining causes of action, Counts Three and Four, be dismissed, with prejudice.

DATED this 6th day of December, 2022.

STRONG & HANNI


By____*/s/ Andrew D. Wright*_____
        Andrew D. Wright
        Andrew B. McDaniel
        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of December, 2022, a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** was served by the method indicated below, to the following:

Brent J. Savage
Kathryn Hughes Pinckney
102 East Liberty Street, 8th Floor
Post Office Box 10600
Savannah, Georgia 31412
lwickline@savagelawfirm.net
kpinckney@savagelawfirm.net

( )    U.S. Mail, Postage Prepaid
( )    Hand Delivered
( )    Overnight Mail
( )    Facsimile
(X)    ECF/Email

Gregory S. Roberts
Ray Quinney & Nebeker
36 South State Street, Suite 1400
PO Box 45385
Salt Lake City, UT 84145-0385
groberts@rqn.com
gsavage@rqn.com

( )    U.S. Mail, Postage Prepaid
( )    Hand Delivered
( )    Overnight Mail
( )    Facsimile
(X)    ECF/Email

/S/ Heidi McEwen