# Copy Certification

State of _Utah_)

§

County of _Salt Lake_)

On this _16_ day of _February_, in the year 20_22_, I certify that the preceding or attached document, is a true, complete photocopy of **_Policy No. SC1212726, CLJ Healthcare, LLC D.B.A Opulence Aesthetic Medicine.,_** as issued with endorsements and certificates attached. Presented to me by the document's custodian and that to the best of my knowledge, the photocopied document is neither a public record nor a publicly recorded document.

Witness my hand and official seal.

SHERRY MATTINGLY
Notary Public
State of Utah
My Commission Expires 11/29/2025
COMMISSION # 721337

Sherry Mattingly, Commission No. 721337

# Prime Insurance Company

**8722 South Harrison Street**
**Sandy, UT 84070**
**Phone: (877) 585-2851  Fax:(877) 585-2852**

## Policy Receipt Form and Coverage Conditions Summary

**Please Sign and Return this Form**

**TO THE PRODUCER AND INSURED:** Coverage provided under the Policy referenced below is expressly conditioned upon you (the "Insured") reviewing and properly executing and returning this Policy Receipt Form and Coverage Conditions Summary ("Form") to us (the "Insurer") within 10 days of receipt of the Policy. This Form requires you to make certain representations and warranties regarding the coverage provided by the Policy and to warrant continuing compliance with terms and conditions of coverage; however, this Form is NOT a complete summary of all terms and conditions of the Policy—you should read the Policy in its entirety. In the event this Form is not timely completed and returned, we reserve the right to cancel the Policy at any time upon notice to you.

Please verify the following information and correct it if necessary.

| | |
|---|---|
| **Insured:** CLJ Healthcare, LLC | **Policy Number:** SC1212726 / |

**Physical Address:** 600 Chastain Rd Ste 224,  Kennesaw,  GA  30144

**Mailing Address:**

**Phone:** (770) 591-3429 **Fax:** 7705919746 **E-Mail:** drnedradodds@yahoo.com; bjones@opulencecs.co

**Endorsements Delivered:** PAP-99-06, PHC-00-01, PAP-99-07 PCL-99-04, PAP-99-16

## You understand, acknowledge, and agree as follows:

1. You received a copy of the Policy and all Endorsements listed on the Declarations. (We sent the Policy to your broker or agent who is responsible for providing the Policy to you. If you have not received the Policy, please contact your broker or agent immediately and request it.)

2. The Policy is a "manuscript policy," which means it does not follow any standard insurance policy form.

3. Your completed Application has been received, reviewed, and relied upon by us in pricing coverage and issuing the Policy, and it, along with any other information provided by you, forms a part of the Policy.

4. The insurance broker or agent is acting as your agent and NOT our agent, and the broker or agent is not authorized to bind coverage on our behalf.

5. Coverage is limited to the activities and operations and at those locations listed, described, and defined on the Declarations and in the Policy. Any changes to your policy, including address changes, must be made in writing through your broker or agent.

6. You are required to give notice within 72 hours to us of your discovery of any incident, occurrence, event, loss, or accident, which may lead to a claim: cda@primeis.com or 877-585-2849. Claim Expenses reduce the available Limits of Liability available under the Policy.

7. Policy fees are non refundable regardless of whether the Policy is cancelled.

8. We have the right to collect additional premium equal to 25% of the total premium due for the Policy if you fail to comply with any premium audit request made by us at anytime.

9. The Policy provides for a Self-Insured Retention ("SIR") that must be paid by you in the event of a claim, per claim.

10. Both our delivery of the Policy to the broker or agent acting for you and your signature on this form separately constitute your express acceptance of the terms and conditions of the Policy.

11. The undersigned is authorized to execute this form and to bind the Insured identified on the Declarations.

12. Terrorism and retroactive date coverages were offered to you for an additional premium and you expressly rejected such coverage, unless expressly paid for and listed on the Declarations.

13. In the event of any Claim, the minimum, fully earned premium for the Policy will be 100% of the total premium stated on the Declarations, and such minimum, fully earned premium will replace any other minimum-earned premiums charged and will not be subject to short-rate or pro-rata adjustment.

14. The undersigned acknowledges that he/she has been informed that the insurance risk for which he/she desires coverage has been placed pursuant to the surplus line insurance law; and that he/she understands that the insurance company's rates and forms are not subject to review by the state insurance department; that the protection of the Guaranty Fund does not apply to the policy written pursuant to the surplus lines insurance law; and that a surplus lines tax is required by law to be collected on all surplus line insurance premiums.

15. The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management and claims services within the State of Utah. The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah. The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy. In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

NOTE: If this Quote is being provided by Evolution Insurance Brokers ("EIB") for insurance placed with Prime InsuranceCompany ("Prime"), you are hereby informed that EIB is acting as a surplus lines broker for and on behalf of Prime. Certain agreements are in place between EIB and Prime that affect the types and nature of insurance offered through EIB. These agreements include Rick J. Lindsey serving as an officer of both EIB and Prime. You are further informed that nothing herein is meant to indicate that EIB is acting as an agent or broker on your behalf. All insurance decisions must be made independently by you and you are free to seek professional advice regarding such decisions.

**Acknowledged and Agreed:**

Dated: _____

Insured _____

_____       _____
Signature                                    Print Name and Title



Evolution Insurance Brokers, LLC (EIB)
8722 South Harrison St.  Sandy, UT 84070
Phone: 877-678-7342    ▫    Fax: 877-452-6910
Website: www.eibdirect.com

December 21, 2012

CLJ Healthcare, LLC
Opulence Aesthetic Medicine
600 Chastain Rd Ste 224
Kennesaw, GA 30144

RE: Insurance Policy and Policy Receipt Form

We are pleased to provide the enclosed insurance policy and a Policy Receipt Form.
**In order to continue coverage, you must review your Policy and sign and return the enclosed
Receipt Form within 10 days of receipt of your Policy acknowledging that you have read and
understood your coverage.**

Please retain a copy for your records and return the signed Policy Receipt Form to:

Risk Management Direct
P.O. Box 4439
Sandy, UT 84091-4439
Phone: 877-585-2851
Fax: 877-585-2852 Email: rmd@primeis.com

In addition to providing insurance coverage, we are pleased provide you with the services of  Risk
Management Direct, a partner of EIB.  Risk Management Direct partners with you by providing risk
management support as well as a Risk Management Manual, available at www.eibdirect.com under
Forms/Risk Management.  Using the Risk Management Manual is an excellent way of starting a risk
management program for your covered operations.  Please contact us toll free at 1-800-257-5590 or
refer to the Contact Us link at www.eibdirect.com if you should have any questions.  We appreciate
your business and look forward to working with you.

Sincerely,

Natalie Durham
Evolution Insurance Brokers, LLC (EIB)
Contract & Policy Services
Phone: (800) 257-5590 Ext. 5010
Fax: (877) 452-6910
Email: policyservices@primeis.com

Encl.



# Prime Insurance Company
## Declarations
### Page 1 of 2

**THIS CLAIMS MADE INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement between the Insured and the Insurer, and as such it may differ significantly from policies offered by other insurance companies. As a claims made insurance policy, this Policy contains very strict claim reporting requirements which must be followed as conditions precedent to coverage. The terms of this Policy are contractual and are not merely recitals and all application(s), discovery form(s), warranty form(s), and other forms completed by the Insured to obtain coverage form a part of this Policy and constitute warranties of the Insured to the Insurer.**

| | |
|---|---|
| **Policy Number:**  SC1212726 | **Customer Number:**  E08-111408 |

**Policy Period:**  From Effective Date:   12/22/2012   To Expiration Date:   12/22/2013      Retroactive Date:   12/22/2011
(All dates (12:01 a.m.) of the physical address of the Insured.)

**Name and Physical Address of the Insured:**

CLJ Healthcare, LLC

D.B.A.: Opulence Aesthetic Medicine
600 Chastain Rd Ste 224
Kennesaw, GA 30144

**Mailing Address:**

Same

,

**Policy Premium:**

| | |
|---|---|
| Premium: | $3,488.00 |
| Insurer Inspection/Policy Fee: | $350.00 |
| Surplus Lines Broker Fee | $0.00 |
| State Tax: | $153.52 |
| SLSC: | $0.00 |
| **Total:** | **$3,991.52** |

**40 % Premium Earned at Inception**

**Description of coverage afforded hereunder:**     Healthcare Services Professional Liability

**Endorsements and forms afforded to this policy:**       PAP-99-06, PHC-00-01, PAP-99-07 PCL-99-04, PAP-99-16

**Producer:   Evolution Insurance Brokers, LC**
8722 South Harrison St.
Sandy, UT 84070

**Issuing Office:   Prime Insurance Company**
8722 South Harrison St.
Sandy, UT 84070

**Address Notice of Claims to:   Claims Direct Access (CDA)**
8722 South Harrison St.
Sandy, UT 84070

**PRIME INSURANCE COMPANY**

# Prime Insurance Company
## Declarations
**Page 2 of 2**

**Professional Liability**

$0  Per Person

$2,500  Bodily Injury Liability SIR
$2,500  Property Damage Liability SIR

$100,000  Policy Aggregate
$50,000 Professional Liability

| Form Type: | Completed Operations: | Products: |
|---|---|---|
| ☑ Claims Made  ☐ Occurrence | ☐ Include  ☑ Exclude | ☐ Include  ☑ Exclude |

**Limitations: The Policy provides coverage for only those activities and operations otherwise covered under the Policy as listed below and for which a specific coverage charge has been paid.**

| Classification and Description of activities and operations | Code No. | Basis of Coverage Charge |
|---|---|---|
| Retroactive Effective Date - 1 Year | 10011 | Minimum Premium |
| Health Care Professionals | 84464 | Number of Units |
| Health Care Professionals - visits | 84464 | Number of Units |

| Loc.No. | Address |
|---|---|
| 1 | 600 Chastain Rd Ste 224 Kennesaw, GA 30144 |

**Issuing Date:** __12/21/2012__

**Authorized Representative**

This insurance policy is being issued by an insurer that may not be licensed by the state insurance department in this state and may not be subject to this state's supervision and may not be protected in the event of the insolvency of the insurer by this state's guaranty or security fund. This policy issued may not be subject to any or all of the regulations of this state's insurance department pertaining to policy form.

Rick J. Lindsey# 715026

THIS INSURANCE CONTRACT IS REGISTERED AND DELIVERED AS A SURPLUS LINES POLICY UNDER THE SURPLUS LINE LAWS IN THE STATE WHERE THE NAMED INSURED IS LOCATED.  THE INSURANCE IS NOT ISSUED BY AN INSURANCE COMPANY REGULATED BY THE STATE WHERE THE INSURANCE IS ISSUED AND IS NOT PROTECTED BY ANY STATE INSURANCE GUARANTEE FUND

## SERVICE OF SUIT ENDORSEMENT

## PAP-99-06

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Pursuant to a statute of any state of the United States which makes provision therefore, Prime Insurance Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for the purpose in the statute, as its true and lawful attorney for the purpose of accepting service of process of any suit instituted by or on behalf of the Insured.

This Endorsement applies solely to service of process and does not modify any forum selection or choice of law provisions contained in the Policy.

## HEALTHCARE SERVICES PROFESSIONAL LIABILITY INSURANCE POLICY

## PHC-00-01

**THIS CLAIMS MADE HEALTHCARE SERVICES PROFESSIONAL LIABILITY INSURANCE POLICY ("Policy") is a manuscript policy, meaning it is a negotiated agreement between the Insured and the Insurer, and as such it may differ significantly from liability policies offered by other insurance companies.  As a claims made insurance policy, this Policy contains very strict claim reporting requirements which must be followed as conditions precedent to coverage.  The terms of this Policy are contractual and are not merely recitals and all application(s), discovery form(s), warranty form(s), and other forms completed by the Insured to obtain coverage form a part of this Policy and constitute warranties of the Insured to the Insurer.**

**Coverage is provided only for otherwise covered Claims which meet all of the following requirements:**

**(1)  Which are first made against an Insured during the Policy Period, and**

**(2)  Which result from an Event occurring during the Policy Period, and**

**(3)  For which written notice is given to the Insurer in writing during the Policy Period in accordance with the specific informational and timeliness requirements specified in the Policy.**

**In addition, coverage is strictly limited to those activities and operations and at those locations listed, described, and defined herein.  Various other provisions of this Policy restrict and limit the coverage provided.  Please read the Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.**

**Claim Expenses reduce the available Limits of Liability stated on the Declarations.**

**Throughout the Policy and any Endorsements, the words "you," "your," "Insured," and "Named Insured" refer to the Insured shown on the Declarations and any person or organization qualifying as an Insured under Section II of the Policy.  The words "we," "us," "our," "Insurer," and the "Company" refer to the insurance company providing this Policy.**

**Capitalized terms have specific meaning throughout the Policy as defined in the Definitions Section below.**

**The terms of this Policy are contractual and not merely recitals, and the Policy shall be construed as a whole, including all paragraphs, sections, conditions, provisions, exclusions, and Endorsements.**

## SECTION I — COVERAGE

A.  Insuring Agreement

1.  Subject to all other terms and conditions of the Policy, we will pay on your behalf those Damages that you are legally obligated to pay arising out of Wrongful Acts related to the providing of Your Services to which this Policy applies:

a.  Should a Wrongful Act result in Bodily Injury to a registered paying patient of the Insured for which a contracted service agreement with such patient has been signed by the patient and the Insured and the Claim otherwise arises from those specified activities or operations to which this Policy is limited; and

b.  If such Wrongful Act occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declarations and within the United States of America; and

c.  If any Claim arising out of the Wrongful Act is made against you and reported to us in writing during the Policy Period.

The date of a Wrongful Act is the date upon which such Wrongful Act occurred regardless of the date the Wrongful Act is first discovered to have occurred or when Damages from such Wrongful Act are first discovered or first manifest or reported.

2.  We have both the right and the duty to provide for your defense with respect to a Claim covered by the Policy.  We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense.  Notwithstanding anything to the contrary, our duty to provide for such defense will immediately terminate:

a.  When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

b.  If the Insured fails to fulfill any Self-Insured Retention obligation imposed by this Policy in a timely manner;

c.  If the Application attached hereto and forming a part hereof, including any supplemental information related thereto, is discovered by us to contain any material misrepresentation of fact; or

d.  If you violate any of the conditions set forth in this Policy.

3.  We have the sole right, but not the duty, under this Policy to settle those otherwise covered Claims for which the proposed amount to be paid as Damages does not exceed the applicable Limits of Liability. Any such settlement will be binding upon the Insured and will not require the Insured's prior consent or ratification.  Payment of settlement funds or expenses by us shall not relieve you of your duty to make timely payment of any applicable Self-Insured Retention.

4.  We will pay with respect to any Claim we defend:

a.  All Claim Expenses we incur; or

b.  All costs of Suit pursuant to statute or order of court after a verdict is entered against the Insured in the Suit; and

c.  All interest on any judgment that accrues after entry of the judgment and before we pay, tender, or deposit with the court that part of the judgment that does not exceed our Limits of Liability.

Any of the above payments are part of and will reduce the Limits of Liability provided by this Policy. Notwithstanding the foregoing, we shall not be obligated to defend any criminal investigation, criminal proceeding or prosecution against any Insured.

B.  Exclusions

This Policy does not apply to and we will not be obligated to defend you against or pay Damages on your behalf for any of the following:

1.  Any obligation of an Insured under workers compensation, disability benefits, Employee Retirement Income Security Act of 1974, or unemployment compensation law, or any similar law, or any law relating to any employer/employee benefits.

2.  Bodily Injury to or Damages suffered by any person including, but not limited to:

a.  An employee of an Insured arising out of and in the course of:

(1)  Employment by an Insured, or

      (2)  Performing duties related to the conduct of the Insured's business; or

    b.  The spouse, child, parent, brother, or sister of an employee of an Insured as a consequence of Bodily Injury to such employee.

This Bodily Injury and Damages Exclusion applies:

      (1)  Whether an Insured may be liable as an employer or in any other capacity; and

      (2)  To any obligation to share Damages with or repay someone else who must pay Damages because of the injury, including Damages awarded for contribution or indemnity suits.

3.  Claims or Damages:

    a.  Alleged by one Insured against any other Insured (if the Insured is an organization, this exclusion shall apply to any parent, subsidiary, or affiliated company of the Insured defined to include any common ownership or control); or

    b.  Alleged by any general contractors, subcontractors, independent contractors, or property owners of the Insured, or any employees of any such parties (all to be considered "statutory" employees), including but not limited to Claims alleging negligent hiring, supervision, or the providing of any services by such parties.

Coverage provided by this Policy is for third party liability claims only. Claims made by employees of the Insured or by any general contractors, subcontractors, independent contractors, or property owners of the Insured, or any employees of any such parties (all to be considered "statutory" employees), are not eligible for third party liability benefits under the Policy and any such claims are excluded from coverage.

4.  Claims, Damages, or Suits brought by:

    a.  One Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates against another Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliate (defined to include any entity in which the Insured has common ownership or control); or

    b.  Any division or department of any of the entities described in subparagraph a. of this section, or any entity controlled or managed by, or controlling or managing, the Insured; or

    c.  Any officer, director, partner, manager, principal owners, or employee of any of the entities described in subparagraph a. of this section.

5.  Claims related to or arising out of:

    a.  Employment policies or practices of an Insured including, but not limited to, discrimination, termination, discharge, or harassment;

    b.  Employment of any person by the Insured in violation of the law as to age, or of any person under 14 years of age if there is no limiting legal age limit; or

    c.  Employee policies or practices of an Insured including, but not limited to, negligent hiring, selection, firing, reporting, or supervision of employees or contracted personnel.

6.  Claims related to or arising out of the actual, alleged, or threatened commission of any act relating to abusive conduct or sexual activity including, but not limited to, physical or mental abuse, erotic physical contact, sexual abuse, molestation, or harassment.  Claims arising out of or related to such sexual activity are excluded from coverage:

    a.  Whether or not caused or committed by or at the direction of the Insured, its employees, patrons, patients, guests, or other persons lawfully or unlawfully on the Insured's premises or who lawfully or unlawfully come in contact with the Insured's patients, patrons, or employees, or guests;

b.  Notwithstanding that the Claim may allege negligent hiring or entrustment, placement, training, or supervision, failure to provide adequate security or any other allegation of intentional, negligent, or reckless conduct which facilitated or permitted the sexual activity to occur; and

c.  Whether or not any Damage sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

7.  Claims related to or arising out of actual or alleged assault and/or battery, whether caused by or at the direction of the Insured, the Insured's employees or patrons, or from any cause whatsoever.  This Policy further excludes Claims, accusations, or charges of negligent hiring, placement, training, or supervision regarding any actual or alleged assault and battery.  No coverage is provided for Claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security, or other allegations of intentional, negligent, or reckless conduct related to actual or alleged assault and/or battery.

8.  Personal Injury.

9.  Advertising Injury.

10.  Property Damage or loss or damage to personal property.

11.  Damages caused by, arising out of, or related to the use of any Auto, watercraft, aircraft, or other motor driven equipment.

12.  Damage for which an Insured is obligated to pay Damages by reason of the assumption of liability under any contract, agreement, or any express warranty or guarantee.  This exclusion does not apply to liability for Damages:

a.  Assumed in a contract or agreement specifically approved by the Insurer by endorsement to this Policy, provided the Damage occurs subsequent to execution of the contract or agreement; or

b.  That the Insured would have in the absence of the contract or agreement.

13.  Damage for which any Insured may be held liable by reason of:

a.  Causing or contributing to the intoxication of any person; or

b.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c.  Any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or controlled substances; or

d.  The use of alcohol, narcotics, intoxicants or illegal drugs.

14.  Damage arising out of the ownership, boarding, or use of any kind of animal, whether or not domesticated.

15.  Damage arising out of the ownership, use, operation, maintenance, or supervision of any type of mechanical device or equipment, whether or not such device or equipment is ridden by any person or persons.

16.  Damage arising out of the use of any firearms or the manufacture, existence, storage, or use of any materials intended for use as explosives, or the storage or use of any material reasonably known to have explosive tendencies under the storage or use conditions, and any Property Damage caused by any explosion.

17.  Damage which directly or indirectly is the result of an act, error, or omission which was performed by the Insured prior to the Policy Period stated on the Declarations, regardless of the date the Damage was first discovered, first manifest, or reported.

18. Coverage or indemnity for any Claim or Suit arising prior to, during and/or subsequent to the Policy Period, based directly or indirectly upon, and arising out of, or related to asbestos or the cleanup of asbestos.

19. Any Claim related to, caused by, or arising from Pollution or the cleanup of Pollution.

20. Any Claim related to, caused by, or arising from Hazardous Materials or the cleanup of Hazardous Materials.

21. Damage arising out of the willful violation of a penal statute or ordinance.

22. Damage arising out of the acts of an Insured's employee or agent outside the scope of his or her employment or duties, and any acts by any professional providing Your Services on your behalf who is not specifically listed and named as an insured registered professional service provider.

23. Damage resulting from the management or mismanagement of property.

24. Damage expected or intended from the standpoint of any Insured.

25. Any Claim arising out of or resulting from any fee dispute, inappropriate or excessive fees or charges for Your Services, or for any return, restitution, or set off of any profits, fees, costs, charges, or expenses paid to or charges by any Insured.

26. Any Claim for alleged infringement of any patent, copyright, title, slogan, trademark, trade dress, trade name, service mark, service name, or any other intellectual property Claim.

27. Any Claim arising out of or resulting from misappropriation of funds, conversion, theft, embezzlement, failure to maintain any insurance or bond, insolvency, receivership, bankruptcy, liquidation, or financial inability of the Insured to pay off an insurance company or surety.

28. Any Claim arising out of, or alleging violation of, any federal or state securities laws.

29. Any Claim alleging fraud, dishonesty, malicious or criminal acts or omissions, but only if judgment or final adjudication establishes affirmatively such conduct.

30. Any Claim for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, or adjustment of Your Services.

31. Damage arising out of the rendering or failure to render professional services other than those expressly covered hereby and necessary to providing Your Services in conjunction with conducting your business as specifically set forth on the Declarations or Endorsement.

32. Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award, or the return or restitution of legal fees, costs, and expenses.  Claims for, or awards against, any Insured for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages, or any multiplied portion of a compensatory award, are not covered by the Policy regardless of whether they are demanded or awarded based upon the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable.

33. Any Claim seeking relief other than for monetary damages including, but not limited to, Claims for injunctions, temporary restraining orders, or other equitable relief or requiring any Insured to take any action other than the payment of compensatory monetary Damages.

34. Any Claim filed under:

   a.  The Racketeer Influenced and Corrupt Organization Act; or

    b.   Any other statute or regulation, including laws prohibiting monopolization or unlawful restraint of trade, business, or profession.

35.  Any Claim related to, caused by, or arising from mold, mildew, or fungi.

36.  Any Claim related to, caused by, or arising from war and terrorism including, but not limited to:

Any loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss, including:

    a.   War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

    b.   Any "act of terrorism."

For the purpose of this War and Terrorism Exclusion, an "act of terrorism" means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This War and Terrorism Exclusion also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing, or in any way related to acts anywhere in this war and terrorism section.

If the Company alleges that by reason of this War and Terrorism Exclusion, any loss, damage, cost, or expense is not covered by this Policy, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this War and Terrorism Exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.  War and terrorism coverage through an Endorsement in compliance with the U.S. Terrorism Risk Insurance Act of 2002 may be purchased for an additional premium.

37.  Any Claim made by any party other than a paying patient of the Insured facility.

38.  Any Claim arising from (i) procedures performed in operating rooms or therapy facilities, (ii) the operation of sperm or blood banks, (iii) operations, locations, premises, activities, events, services, or acts not specifically covered under this Policy or any Endorsement, or (iv) the receipt or non-payment of any payment due from any source for the performance of any services provided by the Insured or for a resident of the Insured.

39.  Any Claim related to, caused by, or arising from defective products, other than drugs or pharmaceutical products dispersed by a pharmacist working for you and insured hereunder.

40.  Damage arising out of the acts of any physician, psychiatrists and other mental health professionals and counselors, nurse midwife, nurse anesthetist, physician's assistants, counselors, speech therapists, social workers, dieticians, weight loss counselors, or any other medical or health care professional, and any acts of any person as a member of a formal accreditation or professional review or licensing board.

41.  Any Claim related to, caused by, or arising from any act, error, omission or malpractice, negligent or otherwise, or any failure to act in:

    a.   The medical examination of any patient or the diagnosis of any injury, disease, or medical or physical condition;

    b.   Prescribing or failure to prescribe any medication;

     c.   Prescribing, developing, or ordering any treatment or course of treatment for any injury, disease, or physical or medical condition;

     d.   The performance of any medical or surgical procedure required by law to be performed by a physician, or which is customarily performed by a physician;

     e.   The performance of any procedure required by law to be performed by a dentist, or which is customarily performed by a dentist; or

     f.   The performance of any medical or dental diagnostic procedure.

42.  Any Claim related to, caused by, or constituting emotional distress or other mental or emotional state or illness.  Emotional distress is specifically excluded from any definition suggesting emotional distress represents Bodily Injury.

43.  Any Claim related to, caused by, or arising from fire at an Insured's premises and any resulting Damages caused by heat, smoke, fumes, panic, and other related or subsequent events resulting from or related to fire.

44.  Bodily Injury or Property Damage:

     a.   Arising out of, resulting from, caused by, or contributed to by exposure to silica products of any kind, including silica dust or silica in any form or silica in combination with other particulate suspension(s) or dust(s) other than silica;

     b.   Any damages or any loss, cost, or suit by or on behalf of any governmental authority or any other alleged responsible party because of any request, demand, order, or statutory or regulatory requirement that any Insured or any other person or entity should be, or should be responsible for:

         (1)  Assessing the presence, absence, or amount or effects of silica, particulate suspension(s), or dust(s);

         (2)  Identifying, sampling, or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of, or mitigating silica, particulate suspension(s), or dust(s); or

         (3)  Responding to silica, particulate suspension(s), or dust(s) in any way other than as described above.

     c.   Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with any of the subsections above; or

     d.   Any obligation to share damages with or repay someone else who must pay damages as described in any of the subsections above.

## SECTION II — WHO IS AN INSURED?

A.  An Insured is any person and/or entity expressly designated on the Declarations as an Insured.  If the person or entity designated as an Insured is:

1.  An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

2.  A partnership or joint venture, you are an Insured.  Your members and your partners are also Insureds, but only with respect to the conduct of your business.

3.  A limited liability company, you are an Insured.  Your members are also Insureds, but only with respect to the conduct of your business.  Your managers are Insureds, but only with respect to their duties as your managers.

4.  An organization other than a partnership, joint venture, or limited liability company, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

B.  Each of the following is also an Insured:

1.  Your employees, other than either your executive officers (if you are an organization other than a partnership, joint venture, or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to Your Services.

2.  Any person (other than your employee) or any organization while acting as your real estate manager.

3.  Any person or organization having proper authority to conclude Your Services if you die, but only:

a.  With respect to liability arising out of the completion of Your Services; and

b.  Until your legal representative has been appointed.

4.  Your legal representative if you die, but only with respect to duties as such. Any such representative will have all your rights and duties under this Policy.

C.  Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as an Insured if there is no other similar insurance available to that organization. However:

1.  Coverage under this provision is afforded only until the 60th day after you acquire or form the organization or the end of the Policy Period, whichever is earlier; and

2.  Coverage does not apply to Damage that occurred before you acquired or legally formed the organization.

## SECTION III — LIMITS OF LIABILITY

A.  The Limits of Insurance shown on the Declarations and the conditions set forth below fix the most we will pay regardless of the number of:

1.  Insureds; or

2.  Claims made or Suits brought; or

3.  Persons or organizations making Claims or bringing Suits.

B.  Each Wrongful Act Limit of Liability listed on the Declarations is the most we will pay for any combination of Damages and/or Claim Expenses because of all Damages arising or allegedly arising out of any one Wrongful Act. Multiple Claims by one or more parties arising out of a single Wrongful Act or series of related Wrongful Acts resulting in, or allegedly resulting in, Damages suffered by a single resident at an Insured's facility or under the Insured's care, shall be considered a single Claim for purposes of this Policy, and as a single Claim shall be subject to the Limit of Liability listed on the Declarations for a single Claim. For example, if two individuals (such as a resident and a resident's guardian) each make a combination of Claims as the result of a Wrongful Act resulting in actual Bodily Injury to a resident at an Insured's facility, all Claims and claimants alleging a right to recovery under this Policy shall be treated as one Claim and claimant and shall be subject to the maximum Limit of Liability for such Claim. Claim Expenses reduce the available Limits of Liability.

C.  This Policy is subject to any and all Sub-limits identified in this Policy including any identified on the Declarations or on any included Endorsement. The Limit of Liability listed on the Declarations for each resident at an Insured's facility or under the Insured's care is the most we will pay on behalf of the Insured for any combination of Damages and Claim Expenses arising out of a single Claim, including all related Claims.

D.   All Claim settlement costs and Claim Expenses are included within the Limits of Liability shown on the Policy Declarations and are not in addition to such Limits of Liability.  The Limits of Liability apply to the total sum that the Insured, or the Insurer, become legally obligated to pay by reason of any Damages for which coverage is provided by the Policy.

E.   The following items affect our Limits of Liability as outlined:

1.   A single Wrongful Act, or the accumulation of more than one Wrongful Act during the Policy Period, may cause the per event limit and/or the annual aggregate maximum limit to be exhausted at which time the Insured will have no further benefits under the Policy.

2.   Upon the exhaustion of our Limits of Liability, the Insured may request the Insurer to reinstate the original Limits of Liability.  The Insurer has no obligation to accept the Insured's request, but if the request is accepted, the Insurer will offer such reinstatement for the remainder of the Policy Period for an additional premium, which is to be determined by the Insurer.

3.   The Insured understands and agrees that the Insurer has no obligation under the coverage provided by the Policy to notify the Insured of the possibility that the maximum coverage payable is or may be exhausted by any Wrongful Act or combination of Wrongful Acts that occur or may occur during the Policy Period.  The Insured, in his, her, or its sole discretion, must determine if additional coverage should be purchased, and the Insurer has no duty to make a determination or advise the Insured concerning additional coverage.

F.   Notwithstanding anything contained in this Policy to the contrary, the Insurer's financial obligation imposed by the coverage with respect to all Claims hereunder shall not exceed the amount specified on the Declarations as the aggregate Limit of Liability.  This Policy is subject to any and all Sub-limits identified in this Policy including any identified on the Declarations or on any included Endorsement.

G.   Amounts payable under paragraphs B, C, and D of this section above shall directly diminish the respective Limits of Liability as stated on the Declarations.

H.   Our obligation to make any payments under this Policy shall only arise after the payment by the Insured of any SIR amount as specified on the Declarations.  The SIR amount shall apply separately to each and every Claim and to each and every Insured.  The Insurer shall have no duty to make any payment for the defense or settlement of any Claim, or for the satisfaction of any judgment, until the Insured has paid the SIR.  The Limits of Liability of this Policy include the amount of the SIR and are not in excess thereof.

The Insured will pay 100% of the SIR on each and every Claim for Damages and/or Claim Expenses before any payment is due pursuant to the terms of this Policy.  The SIR applies to each and every Claim regardless of whether a claimant presents multiple Claims.  The following obligations and restrictions apply to the SIR:

1.   The Insurer will assume control and defense of all Claims, Suits, and proceedings which, at its sole discretion, may involve this Policy.  Such assumption of the control and defense of any Claim, Suit, or proceeding by the Insurer, including the selection and/or appointment of defense counsel by the Insurer, shall not affect the Insured's responsibility to pay the SIR.

2.   A separate SIR shall be paid for each Claim.  Multiple Claims arising from the same event shall be subject to multiple SIRs.

3.   The Insurer, at its sole discretion and without the consent of the Insured, may agree to the payment of all or any part of the SIR in satisfaction of Claim Expenses, settlements, Damages, or judgments.

4.   The Insurer, at its sole discretion, may pay the amount of the SIR from its own funds in satisfaction of Claim Expenses, Damages, settlements or judgments.  In the event the Insurer chooses to make such payment, the Insured shall reimburse the Insurer within 15 days of the mailing of a demand by the Insurer.

5.   The Insurer, at its sole discretion, may direct the Insured to pay all or any part of the SIR to a third party in satisfaction of Claim Expenses incurred or Damages paid or of settlement or judgment amounts.  The

Insured shall make any required SIR payment within 15 days of the Insurer's direction to make such payment.

6.  In the event the Insured fails to reimburse the Insurer for any SIR amount advanced by the Insurer and the Insurer incurs collection expenses, the Insurer shall be entitled to recover such collection expenses, including reasonable attorneys' fees and expenses, from the Insured to the extent permitted by law.

7.  The Insurer has the right, but not the duty, to settle any covered Claim for which the proposed amount to be paid in Damages and Claim Expenses does not exceed the applicable Limits of Liability.  Such settlements are binding on the Insured and do not require the Insured's prior consent or ratification.

    a.  Any settlement agreed to by the Insurer pursuant to its settlement right shall be subject to cancellation by the Insurer if the Insured fails to pay the SIR timely.

    b.  If any settlement agreed to by the Insurer is not concluded due to the failure of the Insured to pay the SIR for any reason, the liability of the Insurer for all Claims Expenses, Damages, and/or settlement and judgment amounts shall be limited to the amount for which the Claim could have been settled but for the Insured's failure to tender the SIR.

8.  This Policy shall not apply to any Claim first reported to the Insurer while the Insured is in default in the payment of any SIR due from the Insured.

9.  Failure to timely pay the SIR as required shall be considered to be the same as failure to pay premium when due, and the Insurer may, at its sole discretion, cancel the Policy for such non payment subject to the same notice requirements as set forth in the Policy for cancellation for non-payment of premium. Such cancellation shall not relieve the Insured of its duty to pay any SIR, and the Insurer may offset any return premium due the Insured against any unpaid SIR and take any other necessary steps to collect any unpaid SIR.

## SECTION IV — CONDITIONS

A.  Notice of Act, Accident, Potential Claim, Claim, or Suit

1.  As an express condition precedent to coverage under this Policy, you must give us immediate written notice, as soon as possible and in no event later than 72 hours, of any incident, event, occurrence, loss, Act, or Accident which might give rise to a Claim covered by this Policy.  Written notice must be given to: Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A.  Phone: (877) 585-2849 or (801) 304-5530; Fax: (877) 452-6909 or (801) 304-5536, and include:

    a.  How, when, and where the incident, event, occurrence, loss, Act or Accident took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the Act or Accident.

2.  You and any other involved Insured must:

    a.  Immediately or at the earliest practicable moment, and in no event later than 10 days after receipt by you, send us copies of any demands, notices, summonses, or legal papers received in connection with any Claim or Suit and act in all diligence and prudence to resolve the Claim or Suit; provided, however, that no settlement in excess of any applicable SIR will be agreed to by the Insured without the Insurers' express written consent;

    b.  Authorize us to obtain records and other information;

    c.  Cooperate with us in the investigation, settlement, or defense of the Claim or Suit—the Insurer may require that the Insured submit to examination or questioning, attend hearings, depositions, and trials—additionally, in the course of investigation or defense, the Insurer may require written and/or sworn statements concerning the Claim; and

    d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured, or which provides similar benefits to the Insured, because of injury or damage to which this Policy may also apply.

  3.  No Insured will, except at his own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior consent in excess of any applicable SIR without prior written consent of the Insurer.

B.  Legal Action Against Us

No person or organization has a right under this Policy to:

  1.  Join the Insurer as a party or otherwise bring them into a Suit asking for Damages from an Insured; or

  2.  Sue the Insurer under this Policy unless all of the terms of the Policy have been fully complied with by the Insured.

A person or organization may sue the Insurer to recover on an Agreed Settlement or a final judgment obtained after an actual trial against an Insured, but the Insurer will not be liable for Damages that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Liability available to an Insured.

C.  Other Insurance

  1.  If other valid and collectible insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or Self-Insured Retention, is available to an Insured for a loss covered under this Policy, then:

    a.   This Coverage is excess over the other insurance, including any form of self-insurance or Self-Insured Retention; and

    b.   We will have no duty to defend any Claim or Suit that any other insurer has a duty to defend.  If no other insurer or issuer of a form of self-insurance or Self-Insured Retention defends, we may undertake to do so, but we will then be entitled to enforce the Insured's rights against those other insurers, self-insurers, or self-insured entity for defense costs, contribution, or indemnity.

  2.  When both this Policy and other insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or Self-Insured Retention, apply to the loss on the same basis, we will not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

    a.   If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such loss than that which would be payable if each insurer or self-insured entity contributes an equal share until the share of each insurer or self-insured entity equals the lowest applicable Limits of Liability under any one policy or the full amount of the loss is paid.  With respect to any amount of the loss not so paid, the remaining insurers or self-insured entity will then contribute an equal share of the remaining amount of the loss until each such Insurer has paid its limit in full or the full amount of the loss is paid.

    b.   If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater proportion of such loss than the applicable Limits of Liability under this Policy bears to the total applicable Limits of Liability of all other valid and collectible insurance applicable to such loss.

  3.  If this Policy and any other policy or coverage contract issued to you by us or any company affiliated with us apply to the same Act, the aggregate maximum Limit of Liability or any applicable Sub-limits under all of the policies and coverage contracts shall not exceed the highest applicable Limit of Liability or Sub-limit under any one policy or coverage contract.  This condition does not apply to any policy or coverage contract issued by us or an affiliated company specifically to apply as excess insurance over this Policy.

D.  Premium

1.  We will compute the premium for this Policy in accordance with our rules and rates at the time coverage is issued or renewed on behalf of the Insured.

2.  The premiums shown on this Policy as the advance premiums are minimum and deposit premiums only. At the close of each audit period, we will compute the earned premium for the Policy Period shown on the Declarations.  Audit premiums are due and payable on notice to the Insured.  If the sum of the advance and audit premiums paid for the Policy Period are greater than the earned premium charge, any prepaid premium charges become the fully earned premiums for the Policy Period.

3.  The Insured must keep records of the information we need for premium computation and send us copies at such times as we may request them.

E.  Insured's Representation

By accepting this Policy, you agree that:

1.  The statements on the Declarations, attached Application, and any supplemental applications or information submitted for insurance are accurate and complete representations made by you to us;

2.  We have issued this Policy in reliance upon the submitted Application and any supplemental information provided by you; and

3.  You are subject to all the Policy provisions.

F.  Transfer of Rights of Recovery Against Others To Us

If an Insured has rights to recover all or a part of any payment for Damages or Claim Expenses we have made under this Policy from any person or organization, those rights are hereby transferred to the Insurer. The Insured must do nothing after the loss to impair these rights.  At our request, the Insured will bring Suit or transfer those rights to us and will do all things we request to assist us to enforce those rights and collect payments made under the Policy.

G.  Non-Assignable

No interest, coverage, or rights under this Policy may be assigned or transferred to any other person or entity without the prior written consent of the Insurer.  This Policy is issued to the Insured as owned and managed at the time of the Application and does not transfer upon a change in ownership or management without prior written approval of the Insurer.

H.  Cancellation and Non-Renewal

1.  The Insured shown on the Declarations may cancel this Policy by mailing a request to cancel to the Insurer.  No prior notice to the Policy's regular coverage ending date is required.

2.  The Insurer may cancel this Policy by mailing first class or by hand delivery to the Insured written notice of cancellation at least:

a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium or upon your failure to pay any SIR premium or any other cost or fee required to be paid under the terms of this Policy; or

b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  The Insurer will mail or deliver any notice of cancellation to the Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date.

5.  If this Policy is cancelled by the Insurer, the premium for the period from the date of cancellation to the expiration date will be refunded at the short-rate plus a cancellation fee equal to 10% of the total Policy premium, all of which will be deemed the minimum, fully-earned premium for the cancelled Policy.  The total premium will be deemed the minimum, fully-earned premium in the event a Claim is made at anytime on the Policy prior to cancellation.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, a prepaid proof of mailing is sufficient proof of notice to the Insured.  Notice deposited in the mail in the manner described above shall be effective when so deposited.

7.  If the Insurer decides not to renew this Policy, the Insurer is not required to send any notice of such non-renewal.

8.  At no time will cancellation of this Policy for any reason require the Insurer to refund an amount of premium over or above the minimum, fully-earned premium set out in this Policy.

9.  In the event of any Claim, the minimum, fully-earned premium for the Policy will be 100% of the total premium stated on the Declarations, and such minimum, fully-earned premium will replace any other minimum earned premiums stated on the Declarations and will not be subject to short rate or pro-rata adjustment.

I.  Changes

This Policy, including any Endorsements, contains all of the agreements between the Insured and the Insurer concerning the insurance provided by the Policy.  The coverage terms can be amended or waived only by Endorsement issued by us and made a part of the Policy.  Endorsements adding additional Insureds, coverage, or otherwise materially changing the Policy will require additional premium to be collected from the Insured before the Endorsement will become effective.  Additional premium associated with any Endorsement will be calculated by the Insurer based upon its then current rates; although, no specific rate is guaranteed to the Insured.  Notice to any agent, broker, or service provider, or knowledge possessed by any agent, broker, service provider, or by any other person, shall not effect, waive, or change any part of the coverage provided the Insured under the Policy, or limit the Insurer from asserting any right under the terms of the Policy.

J.  Examinations, Inspections, and Surveys

The Insurer has the right, but is not obligated to:

1.  Examine and audit your books and records as they relate to this Policy at anytime during the Policy period and up to three years thereafter;

2.  Make inspections and surveys of the Insured and its operations, premises, equipment, property, and books at anytime;

3.  Prepare reports on the results of the inspections and surveys, and provide copies of said reports to the Insured; and

4.  Recommend and/or require changes, repairs, or other acts to be completed as a condition precedent to continued coverage under the Policy.

The inspections, surveys, reports, or recommendations relate to the insurability of an Insured and the premium to be charged.  We do not make safety inspections, undertake to provide legal advice or opinions, or perform the duty to any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions of the Insured's premises or other working environment under the Insured's control are safe or healthy, or comply with any or all federal, state, county, or local laws, regulations, codes, or standards.  This limitation of our service applies not only to us, but also to any rating, advisory rating service,

or similar organization or individuals that may provide insurance inspections, surveys, reports, or recommendations at the request of the Insurer.

K.  Premium Audit

The initial premium for this Policy represents a minimum estimated premium based upon the exposures you told us you would have when you requested coverage.  We expressly retain the right to conduct a premium audit of your records at anytime to determine if the exposures are ultimately greater than you told us.  This premium audit may take the form of a request of you to provide proof of exposures by completing a self-audit form and supplying any type of supporting business records (such as proving gross receipts) or an audit conducted by our agent by physically inspecting your books and records.  In the event you fail to comply with any premium audit request, including failing to provide any requested information, you authorize us to assume additional exposures and charge and collect from you the greater of an additional premium equal to 25% of the original premium and the actual amount due based upon any premium audit findings.  You also expressly agree to pay any costs associated with our efforts to collect any additional premium due from you.  Under no circumstance will the minimum estimated premium be reduced as the result of any premium audit—the original premium represents a minimum premium for the Policy.

L.  False or Fraudulent Claim

If any Insured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards to amount or otherwise, this Policy shall become null and void and all coverage hereunder shall be forfeited.

## SECTION V — DEFINITIONS

A.  "Accident" means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any Insured.

B.  "Act" means a Wrongful Act covered under the Policy.

C.  "Advertising Injury" means injury arising out of one or more of the following offenses:

1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

2.  Oral or written publication of material that violates a persons right of privacy;

3.  Misappropriation of advertising ideas or style of doing business; or

4.  Infringement of copyright, trademark, patent, title, or slogan.

D.  "Agreed Settlement" means a settlement and release of liability signed and/or authorized in writing by the Insurer.

E.  "Application" means the application for insurance coverage form, and any information provided therewith, completed by or for or on behalf of the Insured requesting insurance coverage from the Insurer.

F.  "Auto" means a land motorized vehicle, trailer, or semi-trailer, including any attached machinery or equipment.

G.  "Bodily Injury" means physical injury to a person's body, including resulting death, but expressly excludes:

1.  Sickness or disease sustained by any person or death resulting therefrom, and

2.  Mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof suffered by any person, including any patient or any third party claiming through a patient, including but not limited to parents, siblings, or children of a patient.

H. "Claim(s)" means any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding.

I. "Claim Expenses" mean:

    1. All fees, costs, and expenses charged by any lawyer or other service provider designated by the Insurer to represent the Insured; and

    2. All other fees, costs, and expenses, including the Insurer's own internal fees, costs, and expenses, or those of an affiliate, resulting from the investigation, adjustment, defense, and appeal of a Claim, as authorized by the Company.

    The determination of the Insurer as to the reasonableness of Claim Expenses shall be conclusive on the Insured.  All Claim Expenses reduce the available Policy limits.

J. "Damages" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Act, but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, punitive, exemplary, treble damages, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

K. "Declarations" means the summary of coverage provided in conjunction with this Policy setting forth essential terms which are expressly deemed a part of this Policy.

L. "Endorsement" means any additional coverage or limitation of coverage contained in any attachment or addendum to this Policy.  Any Endorsement is an indispensable and indivisible part of this Policy.

M. "Hazardous Materials" means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any by-products thereof.

N. "Limit(s) of Liability" means the maximum amount the Insurer will be obligated to pay for an otherwise covered Claim, including payment for Claim Expenses, Damages, or any other sums due under this Policy, the amount of which is set forth on the Declarations.

O. "Loading" or "Unloading" means the handling of property:

    1. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or Auto;

    2. While it is in or on an aircraft, watercraft, or Auto; or

    3. While it is being moved from an aircraft, watercraft, or Auto to the place where it is finally delivered, but Loading or Unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or Auto.

P. "Nursing Home" means an institution licensed in the state where located for the purpose of nursing, convalescent, or geriatric care, but in no event shall the Nursing Home include facilities for regular surgery.

Q. "Personal Injury" means injury, other than Bodily Injury, arising out of one or more of the following offenses:

    1. False arrest, detention, or imprisonment;

    2. Malicious prosecution, discrimination, or civil rights violations, wrongful or retaliatory discharge;

    3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or service personnel;

4.  Oral or written publication of material that slanders or libels a person's or organization's goods, products, or services; or

5.  Oral or written material that violates a person's right of privacy.

R.  "Policy" means the Policy issued by the Insurer to the Insured, including all Endorsements thereto.

S.  "Policy Period" means the period of time beginning on the "Effective Date," as stated on the Declarations, and ending on the earlier of the initial "Expiration Date," as stated on the Declarations, and any effective cancellation date pursuant to the terms of the Policy regardless of any renewal.  Any renewal starts a new Policy Period for the renewal term from the Effective Date of such renewal and ending on the earlier of any effective cancellation date of the renewal pursuant to the terms of the renewed Policy and the "Expiration Date" set forth on the renewal documents.

T.  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous Materials or any other waste including materials to be recycled, reconditioned, or reclaimed.

U.  "Property Damage" means:

1.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically damaged.  All such loss shall be deemed to occur at the time of the Wrongful Act that caused it.

V.  "Retroactive Date" means any date expressly identified on the Declarations as the Retroactive Date.  An expressly identified Retroactive Date shall be considered the Effective Date for determining the Policy Period. If no Retroactive Date is expressly identified on the Declarations, no coverage is provided for any period of time before the Effective Date.

W.  "Self-Insured Retention" or "SIR" means the amount set forth on the Declarations that the Insured will pay for each and every Claim for any combination of Damages and/or Claim Expenses otherwise covered under this Policy.  The Insured will pay 100% of the Self-Insured Retention before any payment is due pursuant to the terms of this Policy.

X.  "Sub-limit" means a limited portion of the total available coverage under the Policy identified for a specific Act, person, or type or nature of loss covered under this Policy.  Sub-limits effective under the Policy are identified on the Declarations or in Endorsements attached to the Policy.  Sub-limits are subject to and deplete any per Act limits and the aggregate Limit of Liability provided by the Policy, and Sub-limits are not in addition to the aggregate Limit of Liability.  Sub-limits and any aggregate coverage limit are reduced by Claims Expenses.

Y.  "Suit" means any proceeding seeking recovery for Damages for Bodily Injury or Property Damage, including:

1.  Any civil action filed in a court of law;

2.  An arbitration proceeding to which you must submit or do submit with our consent; or

3.  Any other alternative dispute resolution proceeding to which you submit with our consent.

Z.  "Wrongful Act" means any incident, negligent act, error, or omission in the rendering of or failure to render services in the conduct of your business or Your Services as such business and/or Your Services are specifically described on the Declarations and/or in an Endorsement.

AA. "Your Services" means Work or operations performed by you or on your behalf as follows:

1.  Services rendered solely in the Insured's capacity as a Nursing Home health care service provider; and

2.  Services furnished in connection with such work or business operations.

## SECTION VI— REIMBURSEMENT

In the event we provide a defense for an Insured under the Policy and it is at any time determined that any Claim or theory of recovery for which a defense has been provided by us is not covered under the Policy, we expressly reserve the right to seek reimbursement of any Damages and/or Claim Expenses associated with any such Claim or theory of recovery from the Insured, including reimbursement on a prorate basis for that portion of any Claim or theory of recovery not covered if multiple Claims or theories of recovery have been asserted.

## SECTION VII — CONFORMITY TO STATUTE & SEVERABILITY

Any portions of this Agreement that are not in conformity with federal, state, or local laws are to be deemed amended to conform to such laws. Further, the provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions, or parts.

## SECTION VIII — MUTUAL AFFIRMATION

Pursuant to the signature, facsimile or otherwise, appearing on the Application, quote, warranty form, Policy, or any other document provided to the Insurer to obtain insurance coverage, the parties affirm that all provisions serve to embody and articulate the entire agreement between the parties hereto, and that the parties unqualifiedly accept and agree to abide by the terms and conditions of the Policy.

## SECTION IX — GOVERNING LAW

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

## SECTION X — CONSENT TO EXCLUSIVE JURISDICTION

The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management and claims services within the State of Utah.  The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah.  The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy.  In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.

**SCHEDULED PERSONNEL**

**PCL-99-04**

Insured:       CLJ Healthcare, LLC

               D.B.A.  Opulence Aesthetic Medicine

Policy #:      SC1212726

Personnel Schedule:

| No. | Employee | General Description |
|-----|----------|---------------------|
| 1 | Candice Moon-Yin | RN |
| 2 | Lisa Tefteller | RN |
| 3 | Teresa Congers | RN |
| 4 | Laura Schwanner | RN |
| 5 | Ivette Ballara | RN |
| 6 | Nedra R. Dodds. MD | Physician |

## GENERAL CHANGE ENDORSEMENT
## PAP-99-16

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Subject to all of the terms and conditions of the Policy, unless expressly changed hereby, this Endorsement and any attached Endorsement(s) are to be deemed to be and form a part of the following Policy:

**SC1212726**

**Reference No:**

Insured:  **CLJ Healthcare, LLC**
          **D.B.A.  Opulence Aesthetic Medicine**

Insurer:    **Prime Insurance Company**

At its agency located in Sandy, Utah                    Endorsement Effective Date  **12/22/2012**

Endorsement type date:  **12/21/2012**

The undersigned hereby represents, acknowledges, and agrees that the Policy is amended through the inclusion of this Endorsement, and any attached Endorsement(s), as follows:

- No coverage for any work in any Emergency Department.

**Total Premium:    $0.00**

**State Tax:          $0.00**
**SLSC:               $0.00**

All other terms and conditions of the policy remain unchanged.

Endorsement: **1**

_____
Authorized Signature

Rick J. Lindsey# 715026

12/21/2012  15:22    4848733128                                            PAGE  03

# CLAIMS WARRANTY AND COVERAGE STATEMENT



## PAP-99-07

Coverage provided under the Policy/Certificate is contingent on the following warranty, requirements, and acknowledgements as evidenced by the Applicant's signature.

### WARRANTY STATEMENT

The "Applicant" is the party to be named as the "Insured"/"Assured" in any insuring contract if issued  By signing this Application, the Applicant for insurance hereby represents and warrants that the information provided in the Application, together with all supplemental information and documents provided in conjunction with the Application, is true, correct, inclusive of all relevant and material information necessary for the Insurer/Underwriter to accurately and completely assess the Application, and is not misleading in any way. The Applicant further represents that the Applicant understands and agrees as follows: (i) the Insurer/Underwriter can and will rely upon the Application and supplemental information provided by the Applicant, and any other relevant information, to assess the Applicant's request for insurance coverage and to quote and potentially bind, price, and provide coverage; (ii) all supplemental information and documents provided in conjunction with the Application are warranties that may become a part of any coverage contract that may be issued; (iii) the submission of an Application or the payment of any premium does not obligate the Insurer/Underwriter to quote, bind, or provide insurance coverage; and (iv) in the event the Applicant has or does provide any false, misleading, or incomplete information in conjunction with the Application, any coverage provided will be deemed void from initial issuance. The Applicant hereby authorizes the Insurer/Underwriter and its agents to gather any additional information the Insurer/Underwriter deems necessary to process the Application for quoting, binding, pricing, and providing insurance coverage including, but not limited to, gathering information from federal, state, and industry regulatory authorities, insurers, creditors, customers, financial institutions, and credit reporting agencies.

### FUTURE CLAIM INCIDENT/REPORTING REQUIREMENT

As an express condition precedent to coverage under this Policy, you must give us immediate written notice no later than 72 hours after any incident, event, occurrence, loss, or Accident which might give rise to a Claim covered by this Policy  Written notice must be given to: Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A.  Phone: (877) 585-2849 or (801) 304-5530; Fax: (877) 452-6909 or (801) 304-5536.

### ACKNOWLEDGEMENT OF RESTRICTIVE SURPLUS LINES COVERAGES

The Policy/Certificate to be issued differs significantly from policies offered by other insurance companies.  It is a manuscript policy with very strict reporting requirements.  The "application" and "warranty-prior claims" forms are a part of the Policy/Certificate and constitute warranties.  Coverage is provided only for otherwise covered Claims: (1) Which are first made by or against an Insured/Assured during the Policy Period, (2) Which result from an Accident occurring during the Policy Period, and (3) For which written notice is given to the Insured/Underwriter during the Policy Period.

NOTE:  If this Quote is being provided by Evolution Insurance Brokers ("EIB") for insurance placed with Prime Insurance Company ("Prime"), you are hereby informed that EIB is acting as a surplus lines broker in and on behalf of Prime.  Certain agreements are in place between EIB and Prime that affect the types and nature of insurance offered through EIB.  These agreements include Rick J. Lindsey serving as an officer of both EIB  and Prime.  You are further informed that nothing herein is meant to indicate that EIB is acting as an agent or broker on your behalf. All insurance decisions must be made independently by you and you are free to seek professional advice regarding such decisions.

In addition, coverage is strictly limited to those activities and operations and at those locations listed, described, and defined in the Policy/Certificate.  Unless otherwise specifically stated in the Policy, the Policy is subject to Utah law and any coverage disputes shall be determined only by a court in the State of Utah.  Various other provisions of this Policy/Certificate restrict and limit the coverage provided. Please read the Policy/Certificate and all Endorsements carefully to determine your rights and duties and what is and is not covered.

Claim Expenses reduce the available Limits of Liability stated on the Declarations Page.  In the event of any Claim, the total amount of any premium charged shall be 100% earned and not subject to short-rate or pro rata adjustment.

The Applicant expressly understands, acknowledges, and agrees that (i) any and all policy fees are fully earned at inception; accordingly, no refund of any policy fees will be made regardless of whether the Policy is cancelled by the covered party or the Insurer/Underwriter for any reason, (ii) the Applicant agrees to pay a service fee for any additional services/Endorsements requested by the applicant and made to the Policy after initial binding unless additional premium is associated with such Endorsement.  An additional fee may be accessed if a cancellation is processed, (v) the Insurer/Underwriter may process checks electronically, and a $25 charge may be  assessed for any check or electronic transaction returned for insufficient funds, (v) the Applicant agrees to pay additional premium equal to 25% of the total premium due for the Policy if the Applicant fails to comply with any premium audit request made by the Insurer/Underwriter at anytime, and (vi) if any portion of the premium is financed through Greenlight Premium Finance Company, the Insurer/Underwriter may add, at any time, any additional premium, audit premium, endorsement fees, cancellation or other fees related to prior or current coverage to the amount financed by the Applicant.

Please check the corresponding box to accept or reject the following coverages, if accepted additional premium will apply.

Accepted   Rejected   (YOU MUST MAKE A SELECTION)

☐   ☒   Limited Terrorism Coverage (ADDITIONAL PREMIUM required if accepted).

☒   ☐   Retroactive Coverage for renewal coverage only (ADDITIONAL PREMIUM required if accepted).

All other terms and conditions of this Policy/Certificate remain unchanged.

Applicant's Signature/Date                              Signature of Broker/Agent of Applicant/Date

Nedva  Dodds

Print Applicant's Name                                 Print Broker/Agent Name

PAP-99-07 10MAY2012

EIBI-F-033 23JAN2012                      Page 6 of 8                      Quote Number: DP0811408-6

# CERTIFICATE OF INSURANCE

DATE (MM/DD/YY)
12/21/2012

| PRODUCER AND THE NAMED INSURED | |
|---|---|
| I.E.B.S.<br><br>8722 S. Harrison St.<br>Sandy, UT 84070<br>(801) 304-5500 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE OF INSURANCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE INSURANCE POLICIES BELOW. |

**INSURERS AFFORDING COVERAGE**

| INSURED | | |
|---|---|---|
| CLJ Healthcare, LLC<br><br>DBA: Opulence Aesthetic Medicine<br>600 Chastain Rd Ste 224<br>Kennesaw , GA  30144 | INSURER A: | Prime Insurance Company |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |

**"LIMITS SHOWN ARE THOSE IN EFFECT AS OF POLICY INCEPTION"**

## COVERAGES

The policies of insurance listed below have been issued to the insured named above for the policy indicated.  Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies. Aggregate limits shown may have been reduced by paid claims.

| TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|
| ☑ **Professional Liability** | SC1212726 | 12/22/2012 | 12/22/2013 | $0 | Per Person |
| ☑ Claims Made | | | | $100,000 | Policy Aggregate |
| ☑ Exclude Products | | | | $50,000 | Professional Liability |
| ☑ Exclude Completed Operations | | | | | |
| ☐ **Commercial Auto Liability** | | | | | |
|   Any Auto | | | | | |
|   All Owned Autos | | | | | |
|   Scheduled Autos | | | | | |
|   Hired Autos | | | | | |
|   Non-Owned Autos | | | | | |
|   Drive Away | | | | | |
| ☐ **Commercial Garage Liability** | | | | | |
|   G.K.L.L. | | | | | |
|   O.T.R.P.D. | | | | | |
|   D.O.C. | | | | | |
|   Cargo | | | | | |
|   On Hook | | | | | |
|   Employee Dishonesty | | | | | |
|   Wrongful Repossession | | | | | |

OTHER

DESCRIPTION OF OPERATION/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
Coverage is limited to only insured activities or operations identified in the Policy. Health Care Professionals, Health Care Professionals - visits., Retroactive Effective Date - 1 Year.

| ☑ CERTIFICATE HOLDER | ☐ ADDITIONAL INSURE | ☐ LOSS PAYEE |
|---|---|---|
| FOR PROOF OF INSURANCE ONLY | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 0 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. |

AUTHORIZED REPRESENTATIVE

UDA-F-030 03OCT2005

## GENERAL CHANGE ENDORSEMENT
## PAP-99-16

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Subject to all of the terms and conditions of the Policy, unless expressly changed hereby, this Endorsement and any attached Endorsement(s) are to be deemed to be and form a part of the following Policy:

**SC1212726**

**Reference No:**

Insured:  **CLJ Healthcare, LLC**
            **D.B.A.  Opulence Aesthetic Medicine**

Insurer:     **Prime Insurance Company**

At its agency located in Sandy, Utah            Endorsement Effective Date   **12/22/2012**

Endorsement type date:  **12/21/2012**

The undersigned hereby represents, acknowledges, and agrees that the Policy is amended through the inclusion of this Endorsement, and any attached Endorsement(s), as follows:

▪ No coverage for any work in any Emergency Department.


**Total Premium:**   $0.00

**State Tax:**        $0.00
**SLSC:**             $0.00




All other terms and conditions of the policy remain unchanged.

Endorsement: **1**

_Authorized Signature_
Authorized Signature

Rick J. Lindsey# 715026

# GENERAL CHANGE ENDORSEMENT
## PAP-99-16

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Subject to all of the terms and conditions of the Policy, unless expressly changed hereby, this Endorsement and any attached Endorsement(s) are to be deemed to be and form a part of the following Policy:

**SC1212726**

**Reference No:**

Insured:  **CLJ Healthcare, LLC**
             **D.B.A.  Opulence Aesthetic Medicine**

Insurer:    **Prime Insurance Company**

At its agency located in Sandy, Utah        Endorsement Effective Date  **4/1/2013**

Endorsement type date:  **4/2/2013**

The undersigned hereby represents, acknowledges, and agrees that the Policy is amended through the inclusion of this Endorsement, and any attached Endorsement(s), as follows:

- Premium to add the following professional: Dr. Michael Carter - Functional Medicine - Physician.


**Total Premium:**   **$39.00**

**State Tax:**       **$1.56**
**SLSC:**         **$0.00**


**This Endorsement is subject to the cancellation and refund provisions of the policy.**


All other terms and conditions of the policy remain unchanged.

Endorsement: **2**

_____
Authorized Signature

Rick J. Lindsey# 715026



**8722 South Harrison St., Sandy, UT 84070**
**P.O. Box 4439, Sandy, UT 84091**
**Phone: 877-724-8181 - Fax: 801-304-5551**
**Website: eibdirect.com**
**E-mail: info@eibdirect.com**

# Premium Invoice

**Bill to:**

**CLJ Healthcare, LLC**
**Opulence Aesthetic Medicine**
600 Chastain Rd Ste 224
Kennesaw, GA 30144

Customer Number  E08-111408                     Invoice Number:     INV409786

Policy Number:     SC1212726-                      Certificate No.:

Insured Name:       CLJ Healthcare, LLC

                              D.B.A. Opulence Aesthetic Medicine

Policy Effective Date:    12/22/2012              Policy Expiration Date: 12/22/2013

**Billing Information:**

| | | |
|---|---|---|
| Gross Premium | $39.00 | |
| Additions: | | |
| Policy Fees | $0.00 | |
| State Tax | $1.56 | |
| SLSC | $0.00 | |
| | $0.00 | |
| Less: | | |
| Commission Retained | $0.00 | |
| Policy Fees Retained | $0.00 | |
| Premium Tax Retained | $0.00 | |
| Amount Received | $75.92 | |
| **Total Due:** | **($35.36)** | |
| **Due Date:** | **05/01/2013** | |

**Please Remit Payment To:**

**E.I.B.**

P.O. Box 4439

Sandy, UT  84091

Make check payable to:  **E.I.B.**

## GENERAL CHANGE ENDORSEMENT
### PAP-99-16

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Subject to all of the terms and conditions of the Policy, unless expressly changed hereby, this Endorsement and any attached Endorsement(s) are to be deemed to be and form a part of the following Policy:

**SC1212726**
**Reference No:**

Insured:  **CLJ Healthcare, LLC**
         **D.B.A.  Opulence Aesthetic Medicine**

Insurer:     **Prime Insurance Company**

At its agency located in Sandy, Utah          Endorsement Effective Date  **4/1/2013**

Endorsement type date:  **4/2/2013**

The undersigned hereby represents, acknowledges, and agrees that the Policy is amended through the inclusion of this Endorsement, and any attached Endorsement(s), as follows:

▪ To add the following professional: Dr. Kevin McCowan - Cosmetic Surgeon, General Surgeon.


**Total Premium:   $34.00**

**State Tax:          $1.36**
**SLSC:               $0.00**


**This Endorsement is subject to the cancellation and refund provisions of the policy.**


All other terms and conditions of the policy remain unchanged.

Endorsement: **3**

_____
Authorized Signature


Rick J. Lindsey# 715026



**8722 South Harrison St., Sandy, UT 84070**
**P.O. Box 4439, Sandy, UT 84091**
**Phone: 877-724-8181 - Fax: 801-304-5551**
**Website: eibdirect.com**
**E-mail: info@eibdirect.com**

# Premium Invoice

**Bill to:**

**CLJ Healthcare, LLC**

**Opulence Aesthetic Medicine**

600 Chastain Rd Ste 224

Kennesaw, GA 30144

| | | | |
|---|---|---|---|
| Customer Number | E08-111408 | Invoice Number: | INV409788 |
| Policy Number: | SC1212726- | Certificate No.: | |
| Insured Name: | CLJ Healthcare, LLC | | |
| | D.B.A. Opulence Aesthetic Medicine | | |
| Policy Effective Date: | 12/22/2012 | Policy Expiration Date: | 12/22/2013 |

**Billing Information:**

| | | |
|---|---|---|
| | Gross Premium | $34.00 |
| Additions: | | |
| | Policy Fees | $0.00 |
| | State Tax | $1.36 |
| | SLSC | $0.00 |
| | | $0.00 |
| Less: | | |
| | Commission Retained | $0.00 |
| | Policy Fees Retained | $0.00 |
| | Premium Tax Retained | $0.00 |
| | Amount Received | $0.00 |
| **Total Due:** | | **$35.36** |
| **Due Date:** | | **05/01/2013** |

**Please Remit Payment To:**

**E.I.B.**

P.O. Box 4439

Sandy, UT  84091

Make check payable to:  **E.I.B.**

PAP-99-16 19MAY2004