IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HAL JENKINS, as the assignee of certain of the claims of CLJ HELATHCARE, LLC; and CLJ HEALTHCARE, LLC, as to certain non-assigned claims,<br><br>Plaintiffs,<br><br>vs.<br><br>PRIME INSURANCE, CO., PRIME HOLDINGS INSURANCE SERVICES, INC. d/b/a CLAIMS DIRECT ACCESS, DAVID MCBRIDE, ESQ., AND EVOLUTOIN INSURANCE BROKERS, LC,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:21CV130 DAK-DAO<br><br>Judge Dale A. Kimball |

This matter is before the court on three motions: a Motion for Summary Judgment and a Motion to Exclude Plaintiff's Retained Expert Ty Sagalow, filed by Defendants Prime Insurance Company ("Prime") and Prime Holdings Insurance Services, Inc., d/b/a Claims Direct Access ("Claims Direct") (collectively, "Defendants"), and a Motion for Reconsideration of Order Granting Motion to Dismiss Evolution Insurance Brokers, filed by Plaintiffs Hal Jenkins ("Mr. Jenkins") and CLJ Healthcare , LLC, (collectively, "Plaintiffs").

On April 25, 2023, the court held a hearing on the motions via Zoom videoconferencing. At the hearing, Brent Savage represented Plaintiffs, and Andrew D. Wright, Andrew B. McDaniel, and Randall A. Smith represented Defendants. At the conclusion of the hearing, the court took the motion under advisement. The court has carefully considered the memoranda filed by the parties, the arguments made by counsel at the hearing, and the law and facts pertaining to the motions. Now being fully advised, the court issues the following

1

Memorandum Decision and Order granting Defendants' Motion for Summary Judgment, denying as moot Defendants' Motion to Exclude Plaintiffs' Retained Expert Ty Sagalow, and denying Plaintiffs' Motion for Reconsideration.

## I. BACKGROUND

This action seeks to recover from Defendants a portion of the $60,000,000 judgment that Mr. Jenkins obtained against CLJ. This case originated in the Superior Court of Cobb County in Georgia. It was then removed to the Northern District of Georgia, where the court dismissed claims against two Defendants, David McBride and Evolution Insurance Brokers ("Evolution Insurance"). The Georgia court deferred on ruling on the remaining causes of action, finding that a Utah court was better positioned to determine the controlling question of whether Prime's Default Judgment against Dr. Dodds and CLJ has a preclusive effect on the remaining causes of action. In Default Judgment action, Prime had sought a declaratory judgment that it owed no further obligations under the Policy for those claims because the Policy's limits had been exhausted. The case was then transferred to the District of Utah for a determination on the remaining claims.

In August of 2021, this court (1) dismissed Plaintiffs' punitive damages and attorneys' fees claims as stand-alone claims (but allowed them to remain as prayers for relief); and (2) ruled that Plaintiffs were precluded from relitigating the applicable policy limit of $50,000 or whether the policy had been exhausted, and therefore, Counts Three (breach of contract) and Four (negligence) were dismissed except to the extent they were based on "Bad Faith legal theories." The instant Summary Judgment Motion pertains to the possible bad faith theories set forth in Counts Three and Four.

## II.  UNDISPUTED MATERIAL FACTS[1]

*A.*   *The Policy*

1. Prime issued professional liability insurance coverage to CLJ in the form of Policy No. SC1212726, with a policy period of December 22, 2012, through December 22, 2013 (the "Policy"). (Policy, ECF No. 109-3).

2. The Policy set forth a Professional Liability limit of $50,000 and an Aggregate Limit of $100,00. (*Id*.)

3. Regarding Prime's defense obligations, the Policy explains as follows:

    **SECTION I – COVERAGE**

    A. Insuring Agreement

    . . .

    2.   We have both the right and the duty to provide for your defense with respect to a Claim covered by the Policy. We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense. Notwithstanding anything to the contrary, our duty to provide for such defense will immediately terminate:

    a.   When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

    (*Id*., pp. 2-3.)

4. The policy included separate duties to defend and to indemnify CLJ. (*Id*., p. 8 (duty to defend); *id*., p. 7 (duty to indemnify)).

5. Under the Policy, Prime had the sole right to settle claims covered under the Policy. (*Id*., p.

---

[1] Plaintiffs set forth many other purportedly undisputed material facts, but the court finds that in light of the court's prior ruling, most of Plaintiffs' facts are not material to the pending summary judgment motion and thus they are not included here.

8).

6. The Policy also sets forth the following "Governing Law" and "Consent to Exclusive Jurisdiction" provisions (the "forum selection clause"):

**SECTION IX— GOVERNING LAW**

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

**SECTION X — CONSENT TO EXCLUSIVE JURISDICTION**

The Insured understands and acknowledges that the Insurer conducts its business activities, including underwriting, risk management and claims services within the State of Utah. The Insured represents and acknowledges that the Insured has purposefully directed its actions to procure the insurance services of the Insurer within the State of Utah and, for that purpose, will make continuous and systematic requests for the Insurer's services in the State of Utah. The Insured acknowledges that, by entering into this policy of insurance, the Insured is deemed to be transacting business within the State of Utah such that the courts of Utah may exercise jurisdiction over it regarding any issues arising out of this Policy. In addition, the Insured hereby understands and consents to the jurisdiction of the courts in the State of Utah and agrees that those courts shall be the exclusive forum for the resolution of any claims or disputes arising between the parties related to any insurance coverage issues and any payments due the Insured under the Policy, unless both the Insurer and Insured agree otherwise in writing.
(*Id*., p 17.)

B.   *The Jenkins Claim*

7. On February 19, 2013, April Jenkins died after a liposuction procedure performed under the direction of Dr. Nedra Dodds at CLJ. (Compl., ECF No. 109-2, ¶¶ 20-21).

8. On August 5, 2013, Hal Jenkins, as next of kin and administrator of April Jenkins' estate, filed suit against CLJ and Dodds, seeking to recover damages arising out of her death (the "Jenkins claim"). (*Id*., ¶31.)

9. Prime defended CLJ and Dr. Dodds in that action, under a reservation of rights. (*Id*., ¶¶ 39,

48; Reservation of Rights Ltr., ECF No. 109-4.)

10. Prime engaged in settlement discussions with Mr. Jenkins' attorney both before and after suit was filed, but the sides were unable to reach a settlement agreement.[2] (Compl., ECF No. 109-2, pp. 5-9.)

11. Upon learning of the filing of the Jenkins lawsuit, Prime tendered the $50,000 policy limit on August 13, 2013, which tender was refused.[3] (*Id.*, ¶ 33.)

12. After exhausting the available limits in the defense of Dodds and CLJ, defense counsel was allowed to withdraw by court order dated July 8, 2014. (*Id.*, ¶ 54.)

13. After an uncontested judgment was entered against CJL, the case proceeded to trial and a jury awarded Jenkins $60,000,000 on December 18, 2018. (*Id.*, ¶¶ 55-58.)

C. *The Utah Declaratory Judgment Action*

14. On January 27, 2015, Prime filed a declaratory judgment action in the Third Judicial District Court of Salt Lake County, State of Utah, styled as *Prime Insurance Company v. Nedra Dodds, M.D. and CLJ Healthcare, LLC d/b/a Opulence Medicine*, Case No. 150900592 (the "Declaratory Judgment Action"). (Declaratory Judgment Compl., ECF No. 109-5.)

---

[2] Plaintiffs dispute that "the sides were unable to reach a settlement agreement," claiming that this is a mischaracterization of the events as they transpired. According to Plaintiffs, a settlement was not reached because Prime failed to accept an offer within the limits made on April 24, 2013. At that point, Jenkins' counsel made the following demand: "I think, in good faith, you should tender your limits for a limited release in the next two weeks." Prime made no tender of any type until August 22, 2013, some four months later. The court finds that the relevant, undisputed fact is that the parties did not reach a settlement.

[3] Plaintiffs claim that the actual tender was August 22, 2013, but the precise date is not material. Also, Plaintiffs do not agree that the limits afforded under the Policy were $50,000, but this court has already ruled that decision, rendered by the Utah State Third District Court, cannot be relitigated. *See* Mem. Dec. & Order, ECF No. 85.

15. After CLJ and Dodds did not appear in that action, on March 19, 2019, the Utah court entered an order granting Prime's Motion for Default Judgment. As part of that Order, the Court concluded that the $50,000 Professional Liability limit applied to the Jenkins claim, and that the entire limit had been exhausted in the defense of that claim. (Order Granting Motion for Default Judgment, ECF No. 109-6.)

### D.  *The Present Action*

16. On or about March 10, 2020, Hal Jenkins, as the assignee of certain of CLJ's claims, and CLJ initiated the present action in Georgia state court, seeking to recover the $60,000,000 judgment and other damages. (Compl., ECF No. 109-2.)

17. That action was subsequently removed to the United States District Court, Northern District of Georgia. Defendants filed a Motion to Dismiss, and the court ultimately dismissed Counts One, Two, and Five of Plaintiffs' Complaint, which meant that no claims remained against Defendants McBride and Evolution Insurance Brokers, LC. (March 3, 2021 Order, ECF No. 109-7.)

18. The Georgia court deferred ruling on the remaining causes of action, finding that a Utah court was better positioned to determine the controlling question of whether Prime's default judgment has a preclusive effect on those claims. As such, the case was transferred to this Court for a determination on those remaining claims. (*Id*. at 17, 20, 24.)

19. In an Order dated August 23, 2021, this Court dismissed Counts Six and Seven of Plaintiffs' complaint. The Court also found that Plaintiffs could only proceed on the two remaining claims, Count Three (breach of contract) and Count Four (Negligence), but solely

with respect to any "bad faith" theories related to those claims. (Memorandum Decision and Order, ECF No. 85, p. 21.)

20. This Court further held that "Plaintiffs are precluded from relitigating the applicable policy limit of $50,000 or whether that policy has been exhausted." (*Id.*, p. 22.)

21. The court stated in its Memorandum Decision that "Plaintiffs may potentially pursue their Bad Faith claims." (*Id.*)

### III. DISCUSSION ON MOTION FOR SUMMARY JUDGMENT

In the instant Motion for Summary Judgment, Defendants argue that Plaintiffs' remaining causes of action fail for multiple reasons.[4]

#### A.   *Count Three (Breach of Contract)*

Defendants contend that Plaintiffs' breach of contract claim is based on allegations that Plaintiffs are estopped from asserting that claim based on this Court's prior ruling about the preclusive effect of the Utah State Court's declaratory judgment ruling. More specifically, Defendants argue that the breach of contract claim centers on allegations that Prime wrongfully asserted that the applicable Policy limit was $50,000, and that Prime prematurely and wrongfully withdrew its defense once it asserted that the $50,000 had been spent.

In light of this Court's prior ruling about the preclusive effect of the Utah State Court's declaratory judgment, the court agrees with Defendants that Plaintiffs are estopped from asserting those arguments. Not only has it been determined that the $50,000 was the

---

[4] There is no dispute that Utah law controls the viability of Plaintiffs' remaining causes of action.

applicable limit, but it has also been determined that the $50,000 was exhausted in CLJ's defense and that Prime was therefore entitled to withdraw its defense. Accordingly, Plaintiffs have no basis to assert that Prime wrongfully withdrew its defense of the Jenkins claim, and Plaintiffs' breach of contract claim (Count Three) therefore must be dismissed.

### B. Count Four (Negligence)

Utah permits two types of claims for improper claims handling in the context of third-party claims. First, Utah recognizes a breach of the covenant of good faith and fair dealing claim—a contract-based claim rather than a tort-based claim—for improper claims handling that occurs before the filing of a third-party lawsuit. Second, Utah recognizes a breach of fiduciary duty claim for improper claims handling that occurs after a third-party suit is filed. This cause of action is sometimes referred to as "third-party bad faith."

Plaintiffs' Count Four (negligence) is based on allegations of improper claims handling. Defendants contend that Utah law does not recognize a claim for negligent claims-handling, and the court agrees. Defendants further argue that even if the claim is treated as a properly pleaded contract-based cause of action or a claim for breach of fiduciary duty/bad faith, the claim is barred by the applicable statute of limitations and is otherwise defective. Each of these arguments is addressed in turn.

First, Defendants argue that to the extent the cause of action is treated as a pre-suit, claims-handling contract-based claim for breach of the implied covenant of good faith and fair dealing ("bad faith") claim, such a claim is barred by the applicable six-year statute of limitations. Utah courts have made clear that alleged improper claims handling that occurs

prior to the filing of a third-party lawsuit provides a cause of action in contract, not tort. *Black v. Allstate*, 100 P.3d 1163 (Utah 2004).

In Count Four, Plaintiffs allege that Prime incorrectly determined the Policy limit to be $50,000 instead of $100,000; that Prime failed to inform CLJ of the Jenkins settlement demand; that Prime did not advise CLJ that it could contribute its own funds toward the settlement; and that Prime did not promptly settle the claim before the filing of the Jenkins lawsuit. In Utah, with the exception of policies for first-party insurance,[5] "actions on insurance policies" must be brought within six years. *See* Utah Code Ann. § 31A-21-313(2); Utah Code Ann. § 78B-2-309(1)(b). Furthermore, under Utah law, a contract action accrues at the time of the alleged breach. *See CounselNow, LLC v. Deluxe Small Business Sales, Inc.*, 430 F. Supp. 3d 1247, 1254-55 (D. Utah 2019).[6]

In this case, there have been no developments that would have tolled the statute of limitations. Accordingly, the statute of limitations on any contract-based bad faith claim expired no later than August 5, 2019, six years from the date the Jenkins suit was filed, as any bad faith conduct occurring after the Jenkins suit was filed would give rise to a claim for breach of fiduciary duty claim instead of a contract claim, as discussed below. Plaintiffs did not file the present action until March 10, 2020, more than seven months after the statute of limitations

---

[5] Such claims involve a three-year statute of limitations.

[6] Relying on dicta from *Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 140 n.20 (Utah Ct. App. 1992), Plaintiffs argue that a claim for bad faith refusal to settle is a different claim, and it does not accrue until the underlying claim against the insured has been fully disposed of. The court disagrees. The *Campbell* case pertained to a post-suit fiduciary duty claim—not a pre-suit breach of contract claim.

expired. Accordingly, any claim based on alleged bad faith conduct arising on or before August 5, 2013, fails as a matter of law.[7]

Moreover, because Plaintiffs cannot show that Prime breached any express term of the Policy, as noted above, Plaintiffs cannot establish a breach of the implied covenant claim. Under Utah law, when there is no breach of an express contract, "'there can be no cause of action for breach of an implied covenant arising therefrom.'" *Shiozawa v. Duke*, 2015 UT App 40, ¶27, n.6, 344 P.3d 1174 (citing *Craner v. Northwestern Mut. Life Ins. Co.*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998)).

Finally, Utah law treats claims relating to claims handling after the filing of the Jenkins lawsuit as a breach of a fiduciary duty claim, sometimes called third-party bad faith. *See Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 799 (Utah 1985) (emphasis added); *see also Savage v. Educators Ins. Co.*, 908 P.2d 862, 865 (Utah 1995); *Black*, 2004 UT 66, ¶27. To the extent Plaintiffs' Count Four is treated as a breach of fiduciary duty/third-party bad faith claim, the Georgia court has already dismissed Plaintiffs' breach of fiduciary duty claims as being time-barred under the applicable four-year statute of limitations, and those claims involved the same allegations.

---

[7] Plaintiffs note that Defendants did not raise a statute of limitations affirmative defense in their Answer. Plaintiffs, however, have not argued that Defendants waived that defense. In any event, the court finds that a belatedly asserted affirmative defense can be considered, even if raised for the first time at summary judgment, so long as a plaintiff is not prejudiced and has the opportunity to respond. *See*, *e.g.*, *Ahmad v. Furlong*, 435 F.3d 1196, 1201-02 (10th Cir. 2006); *Ring v. Lexington Apartments & Motor Inns-Oklahoma*, 3 Fed. App'x 847, 851 (10th Cir. 2001) (unpublished). Plaintiffs have failed to point to any prejudice and have had a full opportunity to respond to Defendants' statute of limitations arguments by way of this Motion. Accordingly, the court finds that there has been no waiver.

Specifically, in the Count Four (negligence) cause of action, Plaintiffs allege that: Prime failed to accept a settlement demand (*See Compl.*, ECF 109-2, ¶ 94); Prime failed to inform CLJ of settlement demands (*See id.*, ¶ 95); and Prime acted on its own behalf and not on behalf of CLJ (*See id.*, ¶ 96). In addition, by way of factual paragraphs incorporated into Count Four, Plaintiffs allege that: Prime inaccurately represented that the Policy limits were $50,000 instead of $100,000 (*See id.*, ¶¶ 26-27, 36-37); Prime failed to settle the case after the Jenkins suit was filed (*See id.*, ¶¶ 32-35, 43); Prime failed to advise CLJ of the Policy's depleting limits and that it could tender its own funds to settle the case (*See id.*, ¶¶ 38, 45, 51); Prime asked its insured for a release after the Policy limit was depleted (*See id.*, ¶ 50); and Mr. McBride had a conflict of interest in advising CLJ (*See id.*, ¶¶ 51-53). The above allegations are the same allegations set forth, or incorporated by reference, in Count Two (breach of fiduciary duty), which was dismissed by the Georgia court, and thus, Count Four must also be dismissed as time barred.

In an attempt to avoid the Georgia court's ruling, Plaintiffs suggest that the Georgia court should have considered Utah law in making its ruling—and by inference that this Court should consider Utah law to reach a different result. To the extent Plaintiffs rely on *Campbell*, this is not a case where the insurer's decision not to settle could not be fully evaluated until a final judgment was issued. It is undisputed that Prime offered to pay the $50,000 limit shortly after the Jenkins suit was filed, and as Plaintiffs have made clear, the real disagreement was over whether the appropriate limit was $50,000 or $100,000. Accordingly, the ultimate disposition of the underlying Jenkins claim was irrelevant to when the statute of limitations began to run. The evidence needed to evaluate the reasonableness of Prime's conduct was its decision to tender $50,000 as the available limit, as opposed to $100,000, and to withdraw its

11

defense when the $50,000 had been exhausted – which are the times when the insureds allege to have begun to experience damages. Thus, Plaintiffs' fiduciary duty/bad faith claim accrued, at the very latest, at the time Prime withdrew its defense on July 8, 2014, upon exhaustion of the $50,000 limit.

Plaintiffs also argue that a bad faith claim does not accrue until the entry of an excess judgment because it is impossible to determine whether the insured has suffered any damages until that time. It is true that, generally, it is difficult to know whether an insured has suffered damages until an excess judgment is entered and their personal assets are exposed. In this case, however, the Policy at issue is a "depleting limits" Policy. As such, CLJ's assets were exposed, and its potential damages began to accrue, when those limits began to deplete as defense costs were incurred.

Finally, to the extent the statute of limitations should be based on Utah law, the statute of limitations for a breach of fiduciary duty claim is four years. Utah Code Ann. §78B-2-307(3); *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 13, 108 P.3d 741, 744. Accordingly, even under Utah law, the statute of limitations expired long before Plaintiffs filed their March 2020 complaint, and thus the claim is still time-barred.

Accordingly, whether Plaintiffs' Count Four is treated as a negligence, implied covenant, or fiduciary duty/third-party bad faith claim, it fails as a matter of law.  Counts Three and Four are therefore dismissed.

IV. **DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S RETAINED EXPERT TY SAGALOW**

Because the court has granted Defendants' Motion for Summary Judgment on the remaining two causes of action, this motion is denied as moot.

## V. PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE GEORGIA COURT'S ORDER GRANTING MOTION TO DISMISS

After briefing and oral argument, the Northern District of Georgia entered an Order dismissing certain counts and parties and transferring the action to this Court. Specifically, the Northern District of Georgia granted the Motion to Dismiss with respect to Count One (legal malpractice as to McBride and Claims Direct), Count Two (breach of fiduciary duty as to McBride and Claims Direct), and Count Five (unauthorized sale of surplus lines insurance as to Prime and Evolution). Because no further claims were pending against McBride and Evolution, the Northern District of Georgia directed that they be dismissed from the case.

Mr. Jenkins sought to appeal this order dismissing McBride and Evolution through a Notice of Appeal to the Eleventh Circuit Court of Appeals. The Eleventh Circuit dismissed that appeal on the basis that it lacked jurisdiction because the order of the Northern District of Georgia was not a final order. Plaintiffs had not requested certification under Rule 54(b) of the Federal Rules of Civil Procedure or 28 U.S.C. § 1292(b).

During oral argument on the appeal in April 2022, the Eleventh Circuit and counsel for the parties explored the issue of whether there could be an appeal of the Northern District of Georgia's Order in light of the Eleventh Circuit not having appellate jurisdiction and the Tenth Circuit's unusual precedent that the Tenth Circuit Court of Appeals cannot review interlocutory orders issued by an out-of-circuit district court, even when that decision is merged into a final decision from a court within the circuit.[8]

---

[8] *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 954 (10th Cir 1989). The Tenth Circuit is apparently the only circuit to have considered this issue and ruled in such a way.

Because there is no final order in this case, Defendants' Motion for Reconsideration is properly construed under Rule 54(b). Motions for reconsideration may only be granted based on the availability of new evidence, an intervening change in the controlling law, or the need to correct clear error or prevent manifest injustice. *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). A motion for reconsideration may be granted only where "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The Tenth Circuit has additionally cautioned:

> A motion for reconsideration . . . [is an] inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. Absent extraordinary circumstances ... the basis for the second motion must not have been available at the time the first motion was filed. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.

*Id.* Here, Plaintiffs have not advanced any new arguments, provided new evidence, or demonstrated that the Georgia court misapprehended the facts, a party's position, or the controlling law, and thus, the court cannot grant the motion to reconsider.

Because Plaintiffs have possibly been foreclosed from appellate review of this decision, in part because of the Tenth Circuit's unique position regarding appellate review of decisions from district courts outside the Tenth Circuit, and to the extent it might open the door to possible appellate review, the court hereby adopts the Georgia court's decision as its own. The court hereby dismisses Count One (legal malpractice as to McBride and Claims Direct), Count Two (breach of fiduciary duty as to McBride and Claims Direct), and Count Five (unauthorized

sale of surplus lines insurance as to Prime and Evolution) for the same reasons set forth by the Georgia court in its Order dated March 3, 2021.[9]

## VI. CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [ECF No. 109] is GRANTED, and Counts Three and Four are DISMISSED; Defendants' Motion to Exclude Plaintiffs' Retained Expert Ty Sagalow [ECF No. 121] is DENIED AS MOOT, and Plaintiffs' Motion for Reconsideration [ECF No. 122] is DENIED. In addition, the court adopts the reasoning and legal conclusions set forth by the Northern District of Georgia in its decision issued on March 3, 2021, and dismisses Counts One, Two, and Five. All claims have now been dismissed, and the court directs the Clerk of Court to close this case.

DATED this 31st day of July, 2023.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[9] ECF No. 109-7.